DRAINAGE DISTRICT No. 1 OF LINCOLN, APPELLEE, v. SUB-URBAN IRRIGATION DISTRICT ET AL., APPELLANTS.

298 N. W. 131

FILED MAY 2, 1941. No. 31075.

*Hoagland, Carr & Hoagland,* for appellants.

*Beeler, Crosby & Baskins, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and YEAGER, JJ., and LANDIS and MUNDAY, District Judges.

EBERLY, J.

The appellee in this action, who will hereafter be referred to as plaintiff, is Drainage District No. 1 of Lincoln county, Nebraska, and is a public corporation organized under the provisions of our statutes, which now appear as article 4, ch. 31, Comp. St. 1929. In the early twenties it constructed, and has since maintained, certain drainage ditches some thirty miles in length in and through a narrow projection of land that separates the North Platte and South Platte rivers in Lincoln county, Nebraska. The ditches maintained

by plaintiff are strictly of artificial construction. They do not have sources in running streams or public waters but drain low-lying lands, in their natural state too wet for farming, of accumulated surface waters diffused thereon and thereover, and of subterranean waters percolating therethrough.

The Suburban Irrigation District, a defendant and appellant, hereinafter referred to as defendant, is a public corporation organized under and by virtue of the irrigation laws of the state of Nebraska, and the members of its board of directors are also named as defendants and appellants.

This is an equity action to determine whether or not the defendant has the lawful right by eminent domain to place obstructions, dams or checks in the drainage ditches of plaintiff, and thereby divert therefrom waters carried therein into the irrigation canal of defendant under an optional diversion permit and appropriation granted by the proper state authorities under date of October 17, 1938.

This is a companion case to *Drainage District No. 1 v. Suburban Irrigation District* (No. 31001) *ante*, p. 333, 297 N. W. 645, in which, by an opinion adopted by this court, the defendant, under the facts contained in the record of that case, was, in effect, enjoined from constructing or maintaining checks or dams in the drainage ditches here in suit, and required to remove from said ditches a check by it constructed, and also enjoined from diverting the waters thereof into its irrigation ditch. Reference is hereby made to the opinion in the case above cited for a description of the terrain involved, the ditches maintained by each of said parties and the mutual intersections thereof, all of which also constitute the *locus in quo* in the instant proceeding.

The record discloses that the final decree enjoining the defendant in case No. 31001 was entered by the district court for Lincoln county on December 12, 1938. At a later date said judgment was superseded by defendant filing a proper bond as provided by law. On February 19, 1940, defendant presented to the county judge of Lincoln county a

petition and application to appropriate property by eminent domain, the purpose of which was, according to this pleading, "to acquire the right to use the right of way and the drainage canal of Drainage District No. 1 at a point on said section 25 approximately 1,200 feet east of the west line of said section 25, township 14, range 32 in Lincoln county, Nebraska; to maintain a check in the flume now constructed and in use at said point by the Suburban Irrigation District; and to acquire the right of way and use of the drainage canal of Drainage District No. 1 and to maintain the same for a distance of approximately 5,000 feet west of said point 1,200 feet east of the west line of said section 25; to place timbers or other materials in said checks at said point; and to divert the waters from said drainage canal into the irrigation canal of the petitioner. Said checks to be used in said drainage canal between the 1st day of April of each year and the 1st day of December of each year and said checks to be released at other times during said year; to acquire the right of the use of the right of way and canal of Drainage District No. 1 for such purposes for a distance of 5,000 feet west of said checks in sections 25 and 26, township 14, range 32 in Lincoln county, Nebraska, and to keep and maintain said drainage canal for such purposes in a manner that will not interfere with the use of said drainage canal for the purposes for which it was constructed by the said Drainage District No. 1."

On March 7, 1940, plaintiff instituted the present action in the district court for Lincoln county, Nebraska, by filing therein its petition challenging the right of defendant to the relief demanded in its condemnation proceeding hereinbefore referred to, and praying that the defendant be enjoined from placing obstructions in plaintiff's drainage ditches, and that defendant be enjoined from proceeding with such condemnation proceeding, and for general relief. On the filing of this petition a restraining order was issued by the district court restraining the proceeding in which defendant was engaged, and, in addition, the hearing on the application for temporary injunction was set down for

March 22, 1940, at 9 o'clock a. m. Thereafter defendant on March 15, 1940, filed its answer joining issue with plaintiff. On March 22, 1940, pursuant to former order of this district court, the matter of the restraining order theretofore issued and the application for temporary injunction was heard by the district court for Lincoln county, and that court, on March 23, 1940, entered an order, by Honorable I. J. Nisley, district judge presiding, "that the temporary injunction be and the same is hereby dissolved and is no more continued in force and effect and the injunction is hereby dismissed at the costs of the plaintiff." The transcript in this case, which imports absolute verity, discloses that at the time of this hearing the time for filing plaintiff's reply had not elapsed and the issues on the merits had not been made up; that no temporary injunction had as yet been issued, and that the restraining order of March 7, 1940, and the application for a temporary injunction were all that was then presented, or all that it was possible to present, to the district court for determination. From a consideration of the entire record, it fairly appears that the effect of the order made on March 23, 1940, was to set aside the restraining order and to deny the issuance of the temporary injunction applied for. On March 30, 1940, defendant filed in the district court its motion that the court "enter a final order of dismissal in this action. * * * In the event that the court does not enter the order of dismissal * * * the defendants move the court to require the plaintiff to file their reply instanter * * * and that the court set this case down for final trial and hearing before the court at once," etc. On the same day the court entered its order, by Honorable I. J. Nisley, district judge, presiding, "that said motion be and the same hereby is overruled. The matter then came on for hearing upon the matter of whether said cause should be set for trial, and after consideration it is ordered that the matter be taken under advisement by the court." The record further discloses that on May 15, 1940, with Honorable J. L. Tewell, district judge, presiding, "The same being one of the days

of the regular May, 1940, term of the district court in and for Lincoln county, Nebraska, the above entitled matter came on for hearing before the court, having been assigned for trial on this date, and upon application of the plaintiff to withdraw its motion to strike from the answer of the defendant, and for leave to file a reply instanter, and the court being fully advised in the premises, grants said leave." Whereupon the parties announced that they were ready for trial. The record discloses that plaintiff filed formal reply on May 15, 1940. At the conclusion of this trial, on May 16, 1940, the district court entered a decree for plaintiff, including a finding "that by virtue of said facts (recited in this decree), and by virtue of the laws of the state of Nebraska, all condemnation proceedings had by the defendant and involved herein are wholly void, on account of having been had without any legislative authority to take the same." In this decree the court permanently enjoined defendants as prayed in plaintiff's petition. From the order of the trial court overruling the motion for a new trial, the defendants appeal.

Of the many contentions presented under this record we find two are controlling, and to them we will devote our attention.

The first is that the action taken by Judge Nisley, as disclosed by the record sketched above, in effect deprived Judge Tewell, who presided at the regular May, 1940, term of that court, of jurisdiction to make any orders in or try said cause, without Judge Nisley's consent.

It is true that in this district we have two district judges of coequal powers. Nevertheless, the order made by the court is the order of the court, not of the particular judge, and it may later be reviewed by the court though its personnel may have changed. It is to be noted that the order entered on March 30, 1940, in response to that part of defendant's motion that the court set this case down for final trial and hearing before the court is, "that the matter be taken under *advisement by the court.*" "Advisement" is defined by a law dictionary as, "Consideration; delibera-

tion; consultation. 'Upon deliberate advisement, we are of opinion,' etc. *In re Hohorst,* 150 U. S. 662, 14 S. Ct. 221, 37 L. Ed. 1211." 1 Bouvier's Law Dictionary, p. 155. Wherein does this order of the court pertaining to "advisement by the court" either expressly or by necessary implication preclude "consideration, deliberation, consultation" with reference thereto by Judge Tewell of that court and a final determination thereof by him at a subsequent term. It appears, however, that the orders entered by Judge Nisley on March 22 and 30, 1940, were not final orders, and in no manner interfered with a full and complete determination of the cause on the merits by Judge Tewell. *Manning v. Connell,* 47 Neb. 83, 66 N. W. 17; *Young v. City of Albion,* 77 Neb. 678, 110 N. W. 706; *Barkley v. Pool,* 102 Neb. 799, 169 N. W. 730; *Bartram v. Sherman,* 46 Neb. 713, 65 N. W. 789; *Stansbury v. Storer & Ellis,* 3 Neb. (Unof.) 100, 91 N. W. 147.

Defendant cites, as sustaining its contention on this part of the record, *Marvin v. Weider,* 31 Neb. 774, 48 N. W. 825, and *Western Newspaper Union v. Dee,* 108 Neb. 303, 187 N. W. 919. We are convinced that the doctrine of the *Dee* case is wholly inapplicable to the record before us. The *Marvin* case has been thrice overruled in this jurisdiction. The true rule is not as stated in the first paragraph of the syllabus of the *Marvin* case, but as stated in the body of the opinion in *Perry v. Baker,* 61 Neb. 841, 86 N. W. 692, as follows: "If a judge makes an erroneous ruling and afterwards in the trial of the case, with more exhaustive investigation of the question, finds his first ruling is wrong, he should not be bound by it. The principle of *res adjudicata* does not apply. The first ruling does not become the law of the case so as to bind the court in the further proceedings therein. The court remains the same whether the *personnel* changes or not. So far as a different rule was announced in *Marvin v. Weider, supra,* that case ought to be overruled." See, also, *Tiernan v. Miller & Leith,* 69 Neb. 764, 766, 96 N. W. 661, and *Follmer v. State,* 94 Neb. 217, 142 N. W. 908.

In addition, in the instant proceeding, it is disclosed that the case was regularly set down for trial at the regular May, 1940, term of the court; the district court regularly convened; the case was called; the issues completed in open court; both parties announced themselves ready for trial; the defendant then presented no challenge to the competency of Judge Tewell to preside and hear this contest, and no question was raised in reference thereto until after the trial was had and the decree rendered. If there was a valid objection to Judge Tewell's right to preside, it certainly had been waived by this conduct of the defendant.

As presented at the bar of this court the second and controlling question in this case is, does the irrigation district have the right of eminent domain to place obstructions and dams in plaintiff's drainage ditches, where they were not contemplated in the original plan of construction, and from what source and how does the irrigation district become vested with power to use and appropriate the water out of such drainage ditches?

It is to be remembered that Nebraska was first settled along the eastern borders and in its river valleys. These lands were not arid lands, nor, indeed, may the entire state be properly designated as an arid state.

Accordingly, in 1866, there was duly enacted by the territorial legislature, as section 1, chapter VII of the Revised Statutes of that year, the following: "So much of the common law of England as is applicable, and not inconsistent with the Constitution of the United States, with the organic law of this territory, or with any law passed or to be passed by the legislature of this territory, is adopted, and declared to be law within said territory." 2 Complete Session Laws of Nebraska, 1866-1877, p. 12. This act, in substance, continues in full force and effect. Comp. St. 1929, sec. 49-101.

In compliance with the terms of this enactment, this court has consistently supported this doctrine: "The common-law rules as to the rights and duties of riparian owners are in force in every part of the state, except as altered

or modified by statutes." *Meng v. Coffee,* 67 Neb. 500, 93 N. W. 713. See, also, *Crawford Co. v. Hathaway,* 67 Neb. 325, 93 N. W. 781.

This being the fundamental and historical basis of water rights in Nebraska, the system of irrigation which was a subsequent development of our law has its foundation and source in statutory enactments and constitutional provisions. Rights of irrigation in this state only exist as thus created and defined, and are necessarily limited in their scope by the language of their creation. Our first enactment on the subject of irrigation was chapter 68, Laws of 1889. This act, entitled "An act to provide for water rights and irrigation, and to regulate the right to the use of water for agricultural and manufacturing purposes," etc., embraced a complete drainage code. It is to be noted that section 1, art. I of this act, provided: "The right of the use of running water, flowing in a river or stream or down a canyon, or ravine, may be acquired by appropriation by any person or persons, company or corporation organized under the laws of the state of Nebraska; *Provided,* that in all streams not more than fifty feet in width, the rights of the riparian proprietors are not affected by the provisions of this act."

This act, amended in 1893, was repealed in 1895, and chapter 69 of the session laws of that year enacted in lieu thereof. This 1895 act described the sources and extent of water dedicated and set apart for irrigation as follows:

"Sec. 42. The water of every natural stream not heretofore appropriated, within the state of Nebraska, is hereby declared to be the property of the public, and is dedicated to the use of the people of the state, subject to appropriation as heretofore provided.

"Sec. 43. The right to divert unappropriated waters of every natural stream for beneficial use shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purposes but when the waters of any natural stream are not sufficient for the use of all those desiring the use of the same,

those using the water for domestic purposes shall have the preference over those claiming for any other purpose, and those using the water for agricultural purposes shall have the preference over those using the same for manufacturing purposes." Laws 1895, ch. 69.

These sections were substantially incorporated in our Civil Administrative Code. See Laws 1919, ch. 190, title VII, art. V, div. 1.

The Nebraska constitutional convention in 1920 amended the Nebraska irrigation provisions to read as follows: Const. art. XV, secs. 4, 5 and 6.

"Sec. 4. *Water a Public Necessity.* The necessity of water for domestic use and for irrigation purposes in the state of Nebraska is hereby declared to be a natural want.

"Sec. 5. *Use of Water Dedicated to People.* The use of the water of every natural stream within the State of Nebraska is hereby dedicated to the people of the state for beneficial purposes, subject to the provisions of the following section.

"Sec. 6. *Right to Divert Unappropriated Waters.* The right to divert unappropriated waters of every natural stream for beneficial use shall never be denied except when such denial is demanded by the public interest. Priority of appropriation shall give the better right as between those using the water for the same purpose, but when the waters of any natural stream are not sufficient for the use of all those desiring to use the same, those using the water for domestic purposes shall have preference over those claiming it for any other purpose, and those using the water for agricultural purposes shall have the preference over those using the same for manufacturing purposes. Provided, no inferior right to the use of the waters of this state shall be acquired by a superior right without just compensation therefor to the inferior user."

These sections, so changed, were submitted to the electorate on the official ballot under the title or designation: "To add sections 4, 5 and 6 to article XIV. Defines priority rights in water."

In the formal address of this constitutional convention to the people of Nebraska these proposed amendments were explained as follows:

"They declare water for domestic use and for irrigation, a natural want; dedicate the use of the waters in the natural streams of the state to the people; grant the right to appropriate the same for beneficial use, except in cases where the public interest requires a denial thereof; recognize the right of prior appropriation subject to the principles that water used for domestic purposes is the superior use, irrigation second, and power third, and provide that the superior user cannot take from the inferior user, without just compensation therefor.

"The purpose of the new sections designated as numbers 4, 5 and 6 and submitted as No. 35 on the ballot is to define the use of water and place the same under constitutional protection, to which, owing to its importance in the development of the agricultural interests of the state, it is entitled." Proceedings of the constitutional convention, 1919-20, vol. 2, p. 2850.

On this basis, these articles were formally adopted by the electorate at the ensuing election.

From the history of our irrigation laws and constitutional provisions, it clearly appears that the expressed purpose of our lawgivers, as now existing, is to limit the right of appropriation for irrigation to the waters of the "natural streams" of the state. No others are embraced in the public dedication thus made.

The drainage ditches of plaintiff are strictly artificial creations. The sources of the waters these ditches contain and carry are in the low-lying lands they drain, which in the state of nature were too wet to farm and over which surface waters were diffused and through which subterranean waters percolated.

The evidence is uncontradicted that for more than ten years there has been no "seeped" lands within plaintiff district. And we are not herein in any manner or to any degree considering or determining the question of irriga-

tion drains constructed or improved for the purpose of carrying the flow from "seeped lands" where such seeped condition was caused by or due to the presence of irrigation ditches and the irrigation waters carried thereby. This question is not before us, is not adjudicated, and this decision may not rightly be cited as determinative thereof.

These drainage ditches are not natural streams or natural watercourses, and their inherent nature exclude them from the class or kind of waters to which our laws of appropriation are now applicable. Not being subject to appropriation for irrigation purposes, the attempt to secure them for the defendant by the exercise of the right of eminent domain was unauthorized by our present laws and wholly ineffective. The proceedings before the county judge under the statutes of eminent domain are void, and the permit granted by the authorities of the state conferred no rights.

It follows that the district court, in the decree entered by it in this case denying the exercise of the power of eminent domain and protecting plaintiff's rights in its property, was correct, and the judgment is

AFFIRMED.