PRISCILLA C. ROGERS, APPELLEE, V. VERL E. PETSCH, ALSO KNOWN AS BUS PETSCH, APPELLANT, IMPLEADED WITH LESTER M. BECK ET AL., APPELLEES.
117 N. W. 2d 771

Filed November 9, 1962. No. 35193.

Atkins, Ferguson & Nichols, for appellant.

Lovell & Raymond, for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This action was brought by Priscilla C. Rogers as plaintiff against Verl E. Petsch as defendant to enjoin interference with the natural flow of water from Nealy Springs and to require the defendant to remove certain structures on his land. By answer and cross-petition the defendant alleged that the flow of water from Nealy Springs did not exceed the volume necessary for his use for domestic purposes, and prayed that the plaintiff be enjoined from trespassing upon his property and interfering with his use of the water and that he recover damages.

The trial court found that the defendant was entitled to the use of the water from Nealy Springs for household purposes, the watering of his garden and lawn around the house, and the watering of all of his livestock; and that the maintenance of two dams or ponds and a lateral running east on the defendant's property was an unlawful interference with the flow of water from Nealy Springs. The trial court enjoined the use of the lateral and ordered the removal of the dams or ponds. The defendant's motion for new trial was overruled and he has appealed.

This being an action for equitable relief, we are required to try the issues of fact complained of de novo and reach an independent conclusion without reference to the findings of the district court. § 25-1925, R. R. S. 1943; Toelle v. Preuss, 172 Neb. 239, 109 N. W. 2d 293.

The property involved in this action is all located within Section 11, Township 23 North, Range 58 West of the 6th P. M., in Scotts Bluff County, Nebraska. The defendant is the owner of that part of the east half of the southwest quarter of Section 11 which lies north of the right-of-way of the Chicago, Burlington & Quincy

Railroad Company, except that part owned by the State of Nebraska and the right-of-way in favor of the State of Nebraska for highway purposes. The plaintiff is the owner of that part of Section 11 which lies between the north or left bank of the North Platte River and the south line of the right-of-way of the Tri-State (Farmers Irrigation District) Canal.

The north boundary of the plaintiff's land is the south line of the Tri-State Canal right-of-way. The railroad right-of-way is directly north of the canal right-of-way. Before 1956 the south boundary of the defendant's property was the north line of the railroad right-of-way. At that time U. S. Highway No. 26 ran parallel to and directly north of the railroad. In 1956 the defendant conveyed a strip of land across his property to the State of Nebraska for highway purposes. Part of the land conveyed had been previously occupied as the highway. As now constructed, U. S. Highway No. 26 curves to the north so that the south line of the highway right-of-way at the west line of the defendant's property is approximately 500 feet north of the north line of the railroad right-of-way. The effect of the 1956 conveyance by the defendant to the state was to sever a triangular tract lying between the railroad right-of-way and the highway right-of-way from the remainder of his property which is north of the highway right-of-way.

The defendant obtained title to his property in 1950 by conveyance from Leonard LaVerne Nealy and Mabel Nealy. The northern part of the defendant's property consists of level terrace farmland. The terrace is a rough bench of Brule clay which is a tight, impervious formation that does not hold or transfer water in large quantities. The Brule clay is covered by a layer of sand and gravel and then a layer of soil. Near the south end of the defendant's property the terrace is eroded. The soil there contains sand and gravel and is of a more porous nature. Nealy Springs flows out of a gully at an elevation 25 or 30 feet below that of the

level terrace farmland. The source of the water flowing from Nealy Springs is return flow from irrigation and natural precipitation.

A concrete dam constructed across the gully impounds water flowing from the springs until it rises sufficiently to flow through a trough near the top of the dam. The trough is a section of round steel pipe 1.69 feet in diameter that has been split lengthwise. There was evidence that the water flowing through the trough was .21 feet deep at the deepest part and the volume of water flowing through the trough was from .059 to .092 cubic feet of water per second. Water flowing through the trough then flows into a pond described as the north pond.

The north pond is approximately one-fifth of an acre in area and from 5 to 8 feet deep. Water can be released from the north pond to the east through a spillway into a lateral which is from 700 to 800 feet long. The first 350 to 400 feet of the lateral is lined with concrete. Water flowing through the lateral eventually flows into a basin near the southeast corner of the defendant's property.

There is a second pond upon the defendant's property described as the south pond. The south pond is approximately one-fourth of an acre in area and is located south and west of the north pond. There was evidence that the volume of water flowing from the north pond to the south pond was 120 gallons per minute.

The plaintiff's rights are based upon two permits for the appropriation of water from Nealy Springs for the purpose of irrigation granted by the Department of Water Resources of the State of Nebraska and its predecessor, the Department of Roads and Irrigation. They are referred to as application No. 2311 and application No. 9777.

In 1933 the plaintiff's land was owned by Paul H. Covington. In that year Covington obtained a permit to appropriate .06 cubic feet of water per second from

Nealy Springs to irrigate a 4-acre tract consisting of his yard and garden. Covington constructed a concrete dam upon the defendant's property just south of the north pond. He then installed a wooden pipeline running from the dam south of the north pond on the defendant's property to the plaintiff's property. Before the pipeline was constructed, water from the springs ran down under the old highway through a culvert and into the Farmers Irrigation Canal during the winter and before the irrigation season. After the pipeline was installed the water ran through the pipe onto the plaintiff's land. During the irrigation season Nealy took all of the water and Covington received only excess or runoff water.

Covington did not use the water from Nealy Springs for irrigation after 1936 and installed two irrigation wells on the plaintiff's land. Covington filed the acreage reports required by section 46-261, R. R. S. 1943, from 1934 through 1956, but there is no evidence that he used any of the water for irrigation purposes after 1936. On August 6, 1956, Covington executed and delivered to the defendant a written assignment of his interest in a license to construct and maintain the pipeline across the railroad right-of-way together with the pipe and works on said right-of-way. O. E. Bible was one of the witnesses to this assignment.

The concrete dam constructed by Covington on the defendant's property just south of the north pond has a hole knocked in it where the wooden pipe was formerly placed. The pipe south of the south pond has collapsed from heavy equipment being operated over the surface of the ground where the pipe is buried.

In 1948 Covington sold the plaintiff's land to the defendant on contract. In 1950 the contract of sale was surrendered by mutual agreement and Covington went back into possession.

In 1956 O. E. Bible purchased the plaintiff's land from Covington and went into possession during the first

part of August. Bible did not use any of the water from Nealy Springs for irrigation and did not file any acreage reports. While he owned the property he installed a third irrigation well. In 1957 Bible sold the property to Lester M. Beck and Hattie M. Beck.

In 1959 the Becks sold the property to the plaintiff on contract. The Becks were made parties to the action but they have no interest in the property other than as contract vendors. In 1959 the Becks filed an application for a permit to appropriate 1 cubic foot of water per second from Nealy Springs to irrigate the entire tract of land owned by the plaintiff. This application, known as No. 9777, was approved by the Department of Water Resources on July 20, 1960.

Exhibit 1-A, a map filed by the Becks as a part of application No. 9777 and referred to in the order approving the application, shows that the applicants proposed to construct a diversion structure upon the triangular tract of land owned by the defendant that lies between the highway right-of-way and the railroad right-of-way. The record shows that the diversion structure or settling basin actually built by the plaintiff is partly upon the defendant's land and partly upon the highway right-of-way. The pipeline leading from the settling basin crosses the defendant's land until it reaches the railroad right-of-way.

The plaintiff's rights in this action depend entirely upon the validity of the permits to appropriate water from Nealy Springs for irrigation purposes granted under application No. 2311 and application No. 9777. There is no authority in our law for the appropriation of water flowing from springs located upon the lands of another where the water does not create or become a stream or watercourse. The right to appropriate water for irrigation purposes under our law is limited to waters of natural steams. Art. XV, §§ 5 and 6, Constitution of Nebraska; §§ 46-202, 46-204, and 46-259, R.

R. S. 1943; Drainage Dist. No. 1 v. Suburban Irrigation Dist., 139 Neb. 460, 298 N. W. 131.

Where the waters flowing from springs flow naturally in a well-defined channel in the course of drainage through other lands, the owner of the land upon which the springs are located does not have an exclusive right to control and use the waters to the injury of lower riparian owners or senior appropriators. Slattery v. Dout, 121 Neb. 418, 237 N. W. 301. But where the waters flowing from springs do not form a watercourse or lake they are surface waters until they empty into and become part of a natural stream or lake. Lackaff v. Bogue, 158 Neb. 174, 62 N. W. 2d 889. See, also, Jack v. Teegarden, 151 Neb. 309, 37 N. W. 2d 387; Snyder v. Platte Valley Public Power & Irr. Dist., 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154. The owner of land upon which surface waters arise may retain them for his own use and change their course upon his own land by ditch or embankment. Nichol v. Yocum, 173 Neb. 298, 113 N. W. 2d 195.

There is no evidence that the waters from Nealy Springs have ever flowed in a definite or well-defined channel. The only evidence as to how the water did or would flow in a state of nature is that it would flow normally toward the valley and river and that before Covington constructed the pipeline it went down through a culvert under the old highway and into the Farmers Irrigation Canal. Surface waters do not lose their character as such by reason of their flowing from the land on which they first make their appearance onto lower land in obedience to the law of gravity or by flowing into a natural basin from which they normally disappear through evaporation or percolation. Lackaff v. Bogue, *supra.*

There is considerable evidence which suggests that the water from Nealy Springs would never reach plaintiff's land in a state of nature. The small volume of water flowing from the springs, the gravelly nature of

320

the soil on the defendant's land south and east of the springs, the concrete dams and lateral constructed by the defendant, the location of the diversion structures erected by Covington and the plaintiff, and the pipelines constructed by Covington and the plaintiff all support an inference that the plaintiff's land would receive very little if any water flowing from Nealy Springs in a state of nature.

We think the evidence in this case, when considered as a whole, establishes that the waters flowing on the defendant's land from Nealy Springs are surface waters and as such are not subject to appropriation by the plaintiff. That being true, the injunctions granted by the trial court should not have been granted. We think the evidence further establishes that the plaintiff had no right to construct the settling basin and pipeline upon a part of the defendant's property.

We have considered the evidence of the defendant in support of his claim for damages and find that he is not entitled to recover any amount from the plaintiff for the expense of hauling feed and cattle to Torrington, Wyoming.

The judgment of the district court is reversed and the cause remanded with directions to enter a judgment in conformity to this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., participating on briefs.