REQUESTED BY: John W. Neuberger, Director, Nebraska Department of Water Resources.
What is the legal definition of a `natural stream'?
To constitute a natural stream it is necessary that there be a permanent supply of water, in the sense that the same conditions will always produce a flow of water in the same channel and that such conditions recur with such a degree of regularity that there is running or live stream for considerable periods of time. However, in order to constitute a natural stream it is not necessary that there be a constant or continuous flow. The volume of flow may fluctuate. In fact, the channel may at times be entirely dry but the stream must have a well-defined and substantial existence.
You have requested of our office a legal definition of a natural stream as referred to in Chapter 46, Article 2 of the Nebraska Revised Statutes. You state that an increasing amount of water from underground wells is running off irrigated lands and entering Nebraska's streams, ravines and canyons. You have taken the position that such run-off and irrigation return flow is public water when it reaches a `natural flowing stream' and is therefore subject to regulation by the Department of Water Resources and to appropriation for irrigation.
The decision of the Nebraska Supreme Court in DrainageDistrict No. 1 v. Suburban Irrigation District, 139 Neb. 460,298 N.W. 131 (1941), clearly establishes the propositions that only the waters of natural streams are subject to appropriation and that diffused surface waters or seepage waters, as such, are not subject to appropriation. In that case it appears that the drainage district constructed and maintained certain artificial ditches for the purpose of draining off surface water from seep land which was otherwise too wet for farming. The irrigation district possessed an appropriation with an optional diversion permit, by virtue of which permit, the district sought to divert and appropriate for irrigation purposes the waters flowing in said drainage ditch. The Supreme Court held that such water was not subject to appropriation by the irrigation district, saying:
 "These drainage ditches are not natural streams or natural water-courses, and their inherent nature exclude them from the class or kind of waters to which our laws of appropriation are not applicable. . . ." (139 Neb. at 471.)
In order to resolve the question here under consideration it becomes necessary to first determine whether or not the stream, ravine, or canyon is a natural stream, and if so, whether the run-off from the irrigated lands entering into such streams renders such water subject to appropriation.
To constitute a natural stream it is necessary that there be permanent supply of water, in the sense that the same conditions will always produce a flow of water in the same channel and that such conditions recur with such a degree of regularity that there is running or live stream for considerable periods of time. However, in order to constitute a natural stream it is not necessary that there be a constant or continuous flow. The volume of flow may fluctuate. In fact, the channel may at times be entirely dry; but the stream must have a well-defined and substantial existence. See Mader v. Mettenbrink, 159 Neb. 118,65 N.W.2d 334 (1954); Kinney on Irrigation and Water Rights, Second Ed., Volume 1, Section 307.
Furthermore, the Supreme Court of Nebraska has said inRogers v. Petsch, 174 Neb. 313, 117 N.W.2d 771 (1962), with regard to waters flowing from springs that:
 "Where the waters flowing from springs flow naturally in a well-defined channel in the course of drainage through other lands, the owner of the land upon which the springs are located does not have an exclusive right to control and use the waters to the injury of lower riparian owners or senior appropriators. [Citations omitted]. . . But where the waters flowing from springs do not form a watercourse or lake they are surface waters until they empty into and become part of a natural stream or lake. [Citations omitted]. . . The owner of land upon which surface waters arise may retain them for his own use and change their course upon his own land by ditch or embankment. [Citations omitted]. . ." (174 Neb. at 319)
It is quite apparent from the above quotations and discussions of Nebraska case law that the legal definition of a natural stream is one that must be applied in a case-by-case basis. The particular facts of each case will ultimately be determinative of whether or not flowing water is a natural stream.
Once the determination has been made that the natural stream exists, seepage, return flow and spillage waters from canals and laterals or from underground pumping enter the channel of a natural stream within an irrigation project area, the Department does have the authority to regulate the use of such water. See our Opinion No. 112 of June 22, 1977. However, you state in your request that there exists in some circumstances a stretch of the drainage system where the ground water well water leaves the irrigated lands of the property of origin and that point where it reaches the natural stream that gives you concern as to the necessity of permits to appropriate that water. We have said in our Opinion No. 100 of July 7, 1959, that where water is used for irrigation and the return flow and seepage escapes into a creek or waterway which is ordinarily dry but has not yet returned to a natural stream, the Department of Water Resources does not have the authority to regulate the use of such water. The theory that seepage and return flow water is not public water and not subject to regulation, unless it has been abandoned and returned to a stream or river was established by our Supreme Court in Drainage District No. 1v. Suburban Irrigation District, supra, and more firmly established in United States v. Tilley, 124 F.2d 859 (8th Cir. 1942). In Tilley, supra, the federal court discussed the Drainage District No. 1 v. Suburban IrrigationDistrict, supra, case wherein it was held that water in drainage ditches flowing from low lying lands was not subject to legal appropriation under the state irrigation laws. The federal court stated:
 "There is, however, nothing in the opinion in that case that in any way conflicts with the declaration in the Ramshorn case, or that raises the slightest doubt as to the correctness of the views there expressed. In fact, the court's decision is expressly predicated upon the premise that only the waters of natural streams are public waters a premise which also is the foundation of the decision in the Ramshorn and Ide cases. The opinion further applicably declares (298 N.W.2d at 136): `The drainage ditches of the plaintiff are strictly artificial creations. . . These drainage ditches are not natural streams or natural water courses, and their inherent nature exclude them from the class or kind of waters to which our laws of appropriation are not applicable.'"
It is fundamental that the Department of Water Resources can regulate only the use of water for which an appropriative right has been granted by it. If the owner of the property of origin of the ground water well run-off water wishes to recapture the water he may do so without regulation by the Department of Water Resources. However, as we have stated before, once the run-off water enters a natural stream those waters are subject to regulation by the Department of Water Resources, including authorized appropriation.
In conclusion, it is our opinion that the Department may lawfully take the position that run-off water from lands irrigated by wells must be controlled prior to its entering a natural stream if one wishes to avoid the numerous administrative activities required by the Department of Water Resources in obtaining approvals and permits. In the absence of control and when such run-off reaches a natural stream it becomes the water of a natural stream and as such it becomes `the property of the public and is dedicated to the use of the people of the state, subject to appropriation.'