CONAGRA, INC., APPELLEE AND CROSS-APPELLANT, V. CARGILL, INCORPORATED, CARGILL HOLDINGS, INCORPORATED, AND MBPXL CORPORATION, APPELLANTS AND CROSS-APPELLEES.

388 N.W.2d 458

Filed June 13, 1986.   No. 83-849.

Fredric H. Kauffman and David R. Buntain of Cline, Williams, Wright, Johnson & Oldfather, for appellants.

John E. North, Bruce C. Rohde, and Leo A. Knowles of McGrath, North, O'Malley & Kratz, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

On March 13, 1986, the appellee and cross-appellant filed a motion in this court to "Correct and Amend Opinion and Order to Conform to Constitutional Requirements." We have determined that all issues relating to this motion should be

considered and a ruling made before considering the issues relating to the merits raised in the motion for rehearing filed on March 26, 1986.

ConAgra claims that retired District Judge Colwell and District Judge Rist, who both voted with the majority, were without authority to participate in the decision under Neb. Const. art. V, § 2, and thus their votes were null and void. The relief sought is amendment of the opinion and order and issuance of a mandate affirming the judgment of the trial court. ConAgra submits that to do otherwise would deprive it of due process of law under U.S. Const. amend. XIV, § 1, and Neb. Const. art. I, § 3.

ConAgra's challenge to the authority of Judge Colwell to sit is wholly without merit. The Nebraska Constitution now provides in article V, § 12, that "[t]he Legislature may provide that any judge of the district court who has retired may be called upon for temporary duty by the Supreme Court." In response to this provision, the Legislature enacted Neb. Rev. Stat. § 24-729 (Reissue 1985), which provides in relevant part:

> The Supreme Court of Nebraska is empowered, with the consent of the retired judge, (1) to assign judges of the Supreme Court and district court who are now retired or who may be retired hereafter to (a) sit in any court in the state to relieve congested dockets or to prevent the docket of such court from becoming congested, or (b) sit for the judge of any court who may be incapacitated or absent for any reason whatsoever . . . .

ConAgra's argument that this section is limited by the express authorization in article V, § 2, of district judges to sit in specific cases is without merit because it fails to recognize that the purpose of the latter provision was to create an elastic system which would enable the court to clear its docket, keep it so, and ultimately allow matters to be determined by a full court of seven judges. *Ruehle v. Ruehle*, 161 Neb. 691, 74 N.W.2d 689 (1956) (Simmons, C.J., partial concurrence).

Judge Rist's authority to sit depends on the construction and interpretation in article V, § 2, of the Nebraska Constitution. This precise issue was addressed in *Ruehle v. Ruehle, supra*. That case involved the appeal of a child support matter, which

was originally heard before six justices. The proposed opinion by Messmore, J., reversing the trial court, resulted in a 3-to-3 vote. The case was reassigned to Simmons, C.J., who submitted a proposed opinion affirming the judgment of the trial court. It also failed of adoption on a 3-to-3 vote. The case was set for reargument and Kokjer, D.J., was asked to sit with the court. Judge Kokjer voted to reverse the judgment. Prior to the vote on Judge Messmore's opinion, a challenge to Judge Kokjer's authority was raised.

Simmons, C.J., submitted a memorandum to the court in which he concluded that "Judge Kokjer was, under the Constitution, sitting with 'all the powers' of a judge of this court." *Ruehle, supra* at 731, 74 N.W.2d at 709. Judge Messmore's opinion was thereafter adopted on a 4-to-3 vote. Although Chief Justice Simmons agreed with the dissenters on the merits of the case, his partial concurrence supported the validity of the court's longstanding practice of appointing district judges to replace Supreme Court judges absent due to incapacitation or disqualification.

Chief Justice Simmons went to great lengths to show that the division guidelines in article V, § 2, provided only minimum requirements. This led him to conclude that the court sits in division and is authorized by the Constitution to do so any time less than seven of the Supreme Court justices sit with one or more district judges. *Ruehle, supra.*

In support of this view, Chief Justice Simmons retraced the debates in the constitutional convention of 1919-20 and concluded that the intent of the framers was to give the court elastic powers to expedite the resolution of cases and, if necessary, determine matters with a full court of seven to avoid the nonresolution of cases by tie votes. *Ruehle, supra.*

Also cited in support of a finding that Judge Kokjer sat with full authority was the fact that immediately following the constitutional convention of 1919-20, where article V, § 2, was amended to provide for the use of district judges, this court sat in panels of five to seven judges, which included district judges. Despite the fact that members of that court were consulted by convention members, and several attorneys appearing before the court were themselves convention members, no objections

were made to this practice. *Ruehle, supra.*

Judge Carter, on the other hand, argued that the language of article V, § 2, clearly limited the participation of district judges to four instances: (1) when the court sits in two divisions of five judges each; (2) when determining the constitutionality of a statute; (3) when hearing the appeal of a homicide conviction; and (4) when reviewing a decision by a division.

ConAgra's argument that the *Ruehle* concurrence by Chief Justice Simmons is not a precedent is without merit. Both Judge Carter's and Chief Justice Simmons' opinions indicate that the issue was raised before the majority opinion was adopted. Chief Justice Simmons investigated the issue, then reported back to the court. Two justices dissented on this ground. *Ruehle v. Ruehle*, 161 Neb. 691, 74 N.W.2d 689 (1956) (Carter and Boslaugh, JJ., dissenting). The four-judge majority implicitly adopted the Chief Justice's view on this matter. In *Maxwell v. Hamel*, 138 Neb. 49, 55, 292 N.W. 38, 42 (1940), the court stated the rule: "As precedents, the controlling features of an opinion are the rules of law necessarily reached and stated in determining the issues presented based upon the facts found in the record." In *Ruehle* the facts indicate that Judge Kokjer's authority was an issue before the court that was resolved by a majority in his favor.

The argument that this court was required to appoint replacement judges from the home districts of the recused justices is without merit. ConAgra has cited no authority other than §§ 5 and 7 of article V of the Nebraska Constitution, neither of which makes any mention of application to substitute judges.

As an additional matter, the issue which the appellee seeks to raise, generally, cannot be raised by a litigant. The appointment of Judges Rist and Colwell by this court was regular, and they were at least de facto judges of this court.

The de facto officer doctrine would seem to preclude the challenge to the two judges' authority. In *Glidden Company v. Zdanok*, 370 U.S. 530, 535, 82 S. Ct. 1459, 8 L. Ed. 2d 671 (1962), the Court indicated:

> Whatever may be the rule when a judge's authority is challenged at the earliest practicable moment . . . in other

circumstances involving judicial authority this Court has described it as well settled "that where there is an office to be filled and one acting under color of authority fills the office and discharges its duties, his actions are those of an officer *de facto* and binding upon the public." . . . Although a United States Attorney may be permitted on behalf of the public to upset an order issued upon defective authority . . . a private litigant ordinarily may not.

Nebraska cases reflect a similar view. See, e.g., *McCollough v. County of Douglas*, 150 Neb. 389, 34 N.W.2d 654 (1948); *Hallowell v. Buffalo County*, 101 Neb. 250, 162 N.W. 650 (1917); *Dredla v. Baache*, 60 Neb. 655, 83 N.W. 916 (1900). The effect of the doctrine is that the acts and judgments of a de facto officer are as binding and valid as those performed and rendered by a de jure officer. *State v. Birdwell*, 188 Neb. 116, 195 N.W.2d 502 (1972); *State ex rel. Weiner v. Hans*, 174 Neb. 612, 119 N.W.2d 72 (1963). The purpose of the doctrine is to protect the interests of the public and third parties. *McCollough v. County of Douglas, supra.*

ConAgra submits that *Glidden Company v. Zdanok, supra*, stands for the proposition that the de facto officer doctrine is overridden in a case such as this because the constitutional composition of the court is a jurisdictional question which can be raised at any time.

*Glidden, supra*, involved the authority of article I judges to sit and determine cases in article III courts under the federal Constitution. In response to the Solicitor General's argument that the de facto doctrine precluded a challenge to the validity of the appointments, the Court held that "[t]he rule does not obtain, of course, when the alleged defect of authority operates also as a limitation on this Court's appellate jurisdiction." *Glidden, supra* at 535. Because the alleged defect in authority related to basic constitutional protections designed in part for the benefit of litigants, the Court determined the issue should be examinable for the first time on direct review. *Glidden, supra.* A strong interest in maintaining the constitutional separation of powers overcame any disruption to the appellate process. *Glidden, supra.*

Similar overriding policy concerns do not exist in the present case. For example, while the federal Constitution makes a strong distinction between the authority of article I and article III judges, the Nebraska Constitution clearly permits district court judges, retired or not, to act as associate Supreme Court judges when necessary for prompt submission and determination of causes. Neb. Const. art. V, § 2; § 24-729. It also expressly permits temporary appointment in some of our most important classes of cases (constitutionality of statutes; appeals from homicide convictions; and review of division cases).

This court has taken a view contrary to that in *Glidden, supra*, upon challenges to a judge's jurisdiction. In *Drainage District No. 1 v. Suburban Irrigation District*, 139 Neb. 460, 298 N.W. 131 (1941), the court refused to reverse the trial judgment for the plaintiff challenging a condemnation proceeding. The defendant's complaint on appeal was that the judge who heard the case was without *jurisdiction* because another judge of the same court had taken the case under advisement as to whether it should be set for trial. Noting that there had been no challenge to the competency of the second judge until after the decree had been entered, the court held that the defendant's conduct waived any valid objection to the judge's right to preside. This court has also protected the acts of special or substitute judges under the de facto officer doctrine. See, e.g., *Barden v. State*, 98 Neb. 180, 152 N.W. 330 (1915); *Dredla v. Baache, supra*.

Furthermore, the motion as it relates to the authority of Judges Rist and Colwell is untimely. This case was argued before the court on November 8, 1984. The opinion was issued on March 7, 1986. The first motion challenging the authority of Judges Rist and Colwell to hear the case was not filed until March 13, 1986.

It is well settled that "a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944); *Haeffner v. State*, 220 Neb. 560, 371 N.W.2d 658 (1985). A constitutional question should be raised at the

earliest practicable opportunity. *Haeffner v. State, supra*; *Metropolitan Utilities Dist. v. Merritt Beach Co.*, 179 Neb. 783, 140 N.W.2d 626 (1966). Such an estoppel or waiver of constitutional rights may occur in contexts other than a challenge to a statute. See, e.g., *Meyer v. City of Alma*, 117 Neb. 511, 221 N.W. 438 (1928) (constitutional rights of eminent domain waived in equity).

Courts in other jurisdictions have recognized the potential for abuses in allowing a party to raise objections to a judge's qualifications when the objection could have been raised at a much earlier point in the proceedings. *In re Estate of Carlton*, 378 So. 2d 1212 (Fla. 1979), presents facts somewhat similar to those in this case. In *Carlton* the petitioner in a probate proceeding requested disqualification of one of the Supreme Court justices 11 months after the petitioner became aware of grounds for disqualification and also after the court had rendered an opinion that it was without jurisdiction over the petition. A motion for rehearing had been filed a week before the motion to disqualify. The latter motion was denied as untimely. The judge in question wrote that the purpose of the timeliness requirement

> is to avoid the adverse effects on the other litigant and the problems of a retrial with its resulting costs and delay. Allowing a party to request disqualification after a decision had been rendered by the Court provides a second opportunity to achieve a favorable result when the first decision is adverse, an opportunity not available to the opposing party.

*Carlton, supra* at 1218. See, also, *Hall v. Com.*, 557 S.W.2d 420 (Ky. 1977); *Shakin v. Board of Medical Examiners*, 254 Cal. App. 2d 102, 62 Cal. Rptr. 274 (1967), *cert. denied and appeal dismissed* 390 U.S. 410, 88 S. Ct. 1112, 19 L. Ed. 2d 1272 (1968); *State v. Jefferson Parish School Board, on motion to vacate judgment and to recuse*, 206 La. 317, 372, 19 So. 2d 153, 171 (1944); *Wustrack v. Hall*, 95 Neb. 384, 145 N.W. 835 (1914). While we have been unable to find any cases involving a challenge to an appellate judge's *constitutional authority* to hear a cause, the rationale of the above-cited cases is relevant here.

ConAgra contends that a waiver theory cannot be fairly applied in this case because it was difficult for it to object to the authority of Judges Rist and Colwell, since a written order appointing them was not entered. The argument is not that the appointments were invalid because the order was not in writing, but is a claim of lack of reasonable notice.

If ConAgra was without means, prior to oral argument, of knowing which judges would be hearing the case, there is still no explanation for its failure to act promptly after the case had been submitted. ConAgra had notice at oral argument when Judges Rist and Colwell entered the courtroom to replace Judges Caporale and Hastings, respectively. Following oral argument, the names of the judges hearing the case were a matter of public record in the office of the Clerk.

Further, the implication that Chief Justice Krivosha violated Neb. Ct. R. of Prac. 2A (rev. 1983) by participating in the hearing on oral argument is without merit. The conference was called at the direction of the court for the purpose of attempting to have the parties define the issues and simplify the record. At the conference in question the issues were not discussed, and there was no discussion of the merits of the case. Notwithstanding this knowledge, ConAgra did not at any time prior to argument move to disqualify the Chief Justice, and gave every indication of its approval of his participation. ConAgra's acquiescence waived any objections to his qualifications.

Finally, ConAgra complains that Fredric Kauffman, one of the counsel for the appellant, "was representing the Chief Justice in a malpractice action filed against him in Lancaster County (Doc. 341, Page 87), which was subsequently appealed to the Supreme Court (No. 83-556)," at the time the Chief Justice held conferences with the parties in an attempt to limit the record and define the issues on appeal. Brief for Appellee at 15-16.

The case referred to, *Neeman v. Ginsburg, Rosenberg, Ginsburg & Krivosha*, was summarily affirmed by this court on June 13, 1984. The present case was submitted on November 8, 1984, and decided on March 7, 1986. We find no basis for disqualification of the Chief Justice in either the preliminary

administrative conferences or his participation in the hearing and determination of the case on its merits.

We conclude that the motion of the appellee lacks merit and should be overruled in its entirety.

MOTION OVERRULED.