ENOS CLARK, APPELLEE, V. CAMBRIDGE & ARAPAHOE IRRIGATION & IMPROVEMENT COMPANY, APPELLANT, ET AL.

FILED SEPTEMBER 18, 1895. NO. 7594.

1. **Navigable Waters.** The courts of this country have not as a rule adopted the common law definition of the term "navigable waters," which here include those waters only which afford a channel for useful commerce, whether the beds thereof are public or private property; and without regard to the influence of the ocean tide.

2. **Evidence:** JUDICIAL NOTICE. The courts of this state take notice without proof that the Republican river is unnavigable.

3. **Riparian Rights.** Except as abrogated or modified by statute, the common law doctrine with respect to the rights of private riparian proprietors prevails in this country.

4. ————: DAMAGES. The right of a riparian proprietor, as such, is property, and when vested can be impaired or destroyed only in the interest of the general public, upon full compensation and in accordance with established law.

5. **Constitutional Law:** IRRIGATION: RIPARIAN RIGHTS. The provision of the irrigation law of 1889, and the act of 1893, amendatory thereof, abolishing riparian rights in all streams over twenty feet in width, is a clear invasion of private property and within the prohibitive features of the constitution.

6. **Injunction:** LACHES. A suitor who has by his laches made it impossible to prevent the completion or use of public works without great injury to his adversary, or inconvenience to the public, is not entitled to the preventive remedy of injunction, but will be confined to the relief obtainable by ordinary means in a court of law.

APPEAL from the district court of Furnas county. Heard below before WELTY, J.

There is a statement of the case in the opinion.

*F. I. Foss* and *W. R. Matson*, for appellant:

As to title to the water rights and character of the stream the following authorities are cited: *Illinois C. R. Co. v. People*, 146 U. S., 387; *Jones v. Soulard*, 24 How. [U. S.], 41; *Smith v. City of Rochester*, 92 N. Y., 463; *Chenango Bridge Co. v. Paige*, 83 N. Y., 178; *Avery v. Fox*, 1 Abb. [U. S.], 246; *The "Montello,"* 20 Wall. [U. S.], 430.

The mill is a public nuisance and subject to abatement. (Wood, Nuisance [2d ed.], 80, 792; Cooley, Torts, 612, 614; *Rhodes v. Whitehead*, 27 Tex., 304; *Mills v. Hall,* 9 Wend. [N. Y.], 315; *Santa Clara County v. Southern P. R. Co.*, 18 Fed. Rep., 423; Gould, Waters, 78; *Lammers*

*v. Nissen*, 4 Neb., 245; *Bissell v. Fletcher*, 19 Neb., 725; *East Omaha Land Co. v. Jeffries*, 40 Fed. Rep., 386.)

The title of the United States is perfect. A stream of water running through a tract of land is part and parcel · of it. Prescription does not avail against the United States. (*Union Mill and · Mining Co. v. Ferris*, 2 Sawyer [U. S. C. C.], 176; *Vansickle v. Haines*, 7 Nev., 249; *Gibson v. Chouteau*, 13 Wall. [U. S.], 93.)

The appropriation of water for the purpose of irrigation affords no ground of complaint by the lower proprietor, though the water be entirely consumed. (*Rhodes v. White-head*, 27 Tex., 304; *Evans v. Merriweather*, 3 Scam. [Ill.], 492.)

The appropriation is made with regard to the ordinary stream. (*Proctor v. Jennings*, 6 Nev., 83; *Inhabitants of China v. Southwick*, 12 Me., 238; *Bell v. McClintock*, 9 Watts [Pa.], 119; Angell, Water Courses [7th ed.], sec. 491*b*; *Thurber v. Martin*, 2 Gray [Mass.], 394; *Smith v. Agawam Canal Co.*, 2 Allen [Mass.], 357; *Monongahela Navigation Co. v. Coon*, 6 Pa. St., 383; *Pixley v. Clark*, 35 N. Y., 520.)

The remedy by injunction does not apply in this case, for the invasion of the right in question is not difficult of estimation and can be adequately compensated in damages. (*Quackenbush v. Van Riper*, 2 Greene Ch. [N. J.], 350; *Woodin v. Wentworth*, 57 Mich., 278; *Bull v. Valley Falls Co.*, 8 R. I., 42; *Spangler's Appeal*, 64 Pa. St., 387; Gould, Waters, sec. 511; *Nosser v. Seeley*, 10 Neb., 467; *De Necochea v. Curtis*, 80 Cal., 397; *Burrows v. Burrows*, 82 Cal., 564.)

There has been such an acquiescence on part of plaintiff in the appropriation complained of as to estop him from claiming the equitable relief sought. (*State v. Graham*, 21 Neb., 329; *Nosser v. Seeley*, 10 Neb., 460; *Forbes v. Mc-Coy*, 24 Neb., 702; *Gillespie v. Sawyer*, 15 Neb., 536; *Richardson v. Doty*, 25 Neb., 426; *Menard v. Hood*, 68

Ill., 121; *Owen v. Ford,* 49 Mo., 436; *Cole v. Duke,* 79 Ind., 107; *East Saginaw Street R. Co. v. Wildman,* 58 Mich., 286; *Mayor v. Mitchell,* 79 Ga., 807; *Brown v. Merrick County,* 18 Neb., 355; *Fremont Bridge & Ferry Co. v. Dodge County,* 6 Neb., 18; *Western Union Telegraph Co. v. Pacific & Atlantic Telegraph Co.,* 49 Ill., 90; *Hazlehurst v. Savannah & N. A. R. Co.,* 43 Ga., 13; *Roberts v. Davidson,* 83 Ky., 279; *Thomas v. Woodman,* 23 Kan., 217; *Swift v. Jenks,* 19 Fed. Rep., 641; *Mayor of Jersey City v. Gardner,* 33 N. J. Eq., 622; *City of Logansport v. Uhl,* 99 Ind., 531; *Westbrook Mfg. Co. v. Warren,* 77 Me., 437; *East & W. R. Co. v. East Tennessee & V. R. Co.,* 75 Ala., 275; *Outcalt v. Helme Co.,* 42 N. J. Eq., 665; *Roath v. Driscoll,* 20 Conn., 533; *Prentiss v. Larnard,* 11 Vt., 135; *Sheboygan v. Sheboygan & F. R. Co.,* 21 Wis., 667; *Bliss v. Kennedy,* 43 Ill., 67; *Varney v. Pope,* 60 Me., 192; *Peters v. Hansen,* 55 Mich., 276.)

*McClure & Anderson,* for intervenors.

*Thomas H. Matters,* for appellee:

As to right of appellee to the water, the following authorities are cited: Consolidated Statutes, sec. 2057; *Pugh v. Wheeler,* 2 Dev. & B. [N. Car.], 55; 6 Lawson, Rights, Remedies & Practice, 2914; *Vansickle v. Haines,* 7 Nev., 249; *Bliss v. Kennedy,* 43 Ill., 76; *Merrifield v. Lombard,* 90 Am. Dec. [Mass.], 172; *Lux v. Haggin,* 10 Pac. Rep. [Cal.], 674; *Davis v. Getchell,* 79 Am. Dec. [Me.], 638; Kinney, Irrigation, 521; Gould, Waters, secs. 304, 305; Angell, Water Courses, sec. 135.

The appellee claims that by virtue of purchase, chain of title from the United States, ten years' uninterrupted possession, appropriation, and more than ten years' user of the water, he has a clear title to the premises and vested rights in the land and use of the water, which cannot be disturbed by legislation. (Constitution, sec. 21, art. 2; *Traver*

55

*v. Merrick County*, 14 Neb., 333; Compiled Statutes, sec. 27, ch. 57; *Monroe v. Ivie*, 2 Utah, 535; *Mud Creek Irrigation Co. v. Vivian*, 74 Tex., 170.)

The Republican river is not in law or in fact a navigable stream. (Kinney, Irrigation, 54; *The "Daniel Ball,"* 10 Wall. [U. S.], 563; *Propeller "Genesee Chief" v. Fitzhugh*, 12 How. [U. S.], 443; *Nutter v. Gallagher*, 24 Pac. Rep. [Ore.], 250.)

The mill is not a public nuisance. (*Traver v. Merrick County*, 14 Neb., 327; *State v. Clay County*, 20 Neb., 452.)

Any user of a stream by an upper proprietor which substantially diminishes its volume or defiles its capacity to such a degree as to essentially impair its purity, and to prevent the use of it for any of the reasonable and proper purposes to which running water is usually applied is improper and will be enjoined. (*Merrifield v. Lombard*, 90 Am. Dec. [Mass.], 172.)

POST, J.

This is an appeal from a decree of the district court for Furnas county perpetually restraining the defendant the Cambridge & Arapahoe Irrigation and Improvement Company from diverting the waters of the Republican river for the purpose of irrigation by means of a ditch or canal of which the defendant company is the owner and proprietor. It is in the petition, in substance, alleged that the plaintiff, in the year 1879, in said county, erected a mill for the purpose of grinding grain, and has since the completion thereof in the year mentioned continuously used and operated said mill for the purpose aforesaid; that his said mill is supplied with water power by means of a dam constructed by him in the Republican river in the year 1879, on land then and now owned by him; that he has since said date until the year 1891 had the continued and uninterrupted use of the water of said river, and which is, when not interfered

with by the defendant, sufficient to supply all of his needs, but that in the year last named the defendant company commenced the construction of a ditch or artificial water-way in said county, which taps the Republican river about fourteen miles above his said mill, and now threatens to divert the water from said stream or so much thereof as to deprive the plaintiff of his water power and render his mill worthless, etc. The defendant for answer, after charging that it is an irrigating company duly and legally organized under the laws of this state, alleges that in the month of August, 1891, it in due and legal form appropriated the waters of the Republican river to the amount of 300,000 cubic inches measured under a four-inch pressure; that it immediately began the construction of an irrigating canal, commencing at the point where said appropriation was made, and that said canal was within a reasonable time fully completed, and by means of which the defendant is now engaged in furnishing water for the purpose of irrigation to divers persons along the line of its said ditch. It is also alleged that the water flowing in the Republican river during ordinary seasons is ample to supply the necessities of the plaintiff notwithstanding the diversion thereof by the defendant company, and notwithstanding the fact that there have been since the year 1885 constructed twenty-seven irrigating canals in this state and the state of Colorado, all of which have acquired by appropriation a valid right to, and are now actually using, the water of the Republican river for the purpose of irrigation. There is a further allegation to the effect that the plaintiff, who was aware of said appropriation and contemplated diversion of water, interposed no objection thereto, but, on the contrary, by his silence encouraged the defendant to undertake and complete the said canal, which was done at great expense, to-wit, at the cost of $40,000, wherefore he should not now for the first time be heard to assert any rights in the premises superior to those of the defendant, and that his remedy, if

any, is by an action for damage and not by injunction. At this stage of the controversy Swan Freeman and six others were permitted to intervene for the purpose of asserting their rights in the premises adverse to the plaintiff. In the pleading interposed by them, in addition to the allegations contained in the answer of the defendant company, it is charged that said intervenors are the owners of farming lands situated under the aforesaid canal, that the defendant is by law required to supply them with water for the irrigation of the several farms, and that their equities in the premises are superior to those of the plaintiff. The statements of the answer and also of the intervenor's petition are met by a reply which may be treated as a general denial. The foregoing statement omits many allegations of the pleadings, some of which are foreign to the real questions involved and others tender issues of law only.

The able arguments with which we have been favored include many questions of vital importance in view of the prominence given to the subject of irrigation in the recent legislation of. this state, but a few of which, for reasons hereafter appearing, call for notice in this opinion.

The first proposition to which we will give attention is that inasmuch as the original surveys meander along the banks of the Republican river and the adjoining lands were conveyed by patents which do not include the bed of that stream, the title thereof remained in the general government, and subsequently passed to and became the property of this state upon its admission into the Union as such,—in short, that the Republican is in legal effect a navigable river, and that plaintiff's dam therein is a public nuisance, and not within the protection of the law. At common law navigable streams are held to be those in which the tide ebbs and flows. (3 Kent, Commentaries, 413, and note; Black's Pomeroy, Waters, sec. 216.) But the doctrine of the common law has not, as a rule, been accepted in this country, and has been entirely repudiated by

the courts of the United States in determining the jurisdiction of congress over lakes and streams, whether situated in two or more states or within the boundaries of a single state.   In those courts navigability in law is synony-' mous with navigability in fact, without regard to the influence of the ocean tide, and includes those waters only which afford a channel for useful commerce (see *United States v. Steamer "Montello,"* 87 U. S., 430; *Miller v. Mayor of New York,* 109 U. S., 385), and although the decisions of the state courts are not altogether harmonious, the rule stated is in accordance with the decided weight of authority. (See 16 Am. & Eng. Ency. of Law, title "Navigable Waters," and the valuable collection of cases therein by Mr. Charles S. Lobingier.)   The courts of this state will take notice of this fact, which is also established by abundant proof, that the Republican is not a navigable river within the foregoing definition.

The appellant's next contention is that conceding the Republican to be unnavigable, the water thereof is public property and may be acquired by appropriation without regard to the claims of riparian proprietors.   That contention is based upon the provisions of the act of March 27, 1889, and which, for convenience, may be referred to as the "Rayner Irrigation Law," the first section of which, as amended in 1893, reads as follows: "The right to the use of running water flowing in any river or stream, or down any canyon or ravine, may be acquired by appropriation by any person, company or corporation, organized under the laws of the state of Nebraska; *Provided,* That in all streams not more than twenty (20) feet in width the rights of the riparian proprietor shall not be affected by the provisions of this act." (Session Laws, 1893, p. 377, sec. 1, ch. 40.)   Authority is by other sections conferred upon persons and corporations in certain cases to condemn the right of way over and upon any lands for irrigating ditches and for the enforced access thereof to the public

waters of the state; and by a subsequent act, water for the
purpose of irrigation is declared to be a natural want.
(Session Laws, 1895, p. 268, sec. 65, ch. 69.) It is con-
ceded that the Republican river exceeds twenty feet in
width and is therefore not within the exception of the sec-
tion quoted. It is important in giving effect to these
statutes to examine them in the light of the laws in force
at the time of their adoption. Although the contrary has
been asserted in some of the arid Pacific states (see *Reno
Smelting, Milling & Reduction Works v. Stevenson*, 20 Nev.,
269; *Stowell v. Johnson*, 26 Pac. Rep. [Utah], 290), the
common law doctrine with respect to the rights of private
riparian proprietors, except as modified by statute, prevails
in this country. (*Eidemiller Ice Co. v. Guthrie*, 42 Neb.,
238; Black's Pomeroy, Waters, secs. 127, 130, and authori-
ties cited.) At common law every riparian proprietor, as
an incident to his estate, is entitled to the natural flow
of the water of running streams through his land, un-
diminished in quantity and unimpaired in quality, although
all have the right to the reasonable use thereof for the
ordinary purpose of life (3 Kent, Commentaries, 439;
Angell, Water Courses, sec. 95; Gould, Waters, sec. 204;
Black's Pomeroy, Waters, sec. 8), and any unlawful diver-
sion thereof is an actionable wrong.

It is a well known fact that our irrigation laws are
modeled after the statutes of California, and we may with
profit look to the interpretation there given them, in deter-
mining to what extent, if at all, they abrogate or modify
common law rules. In *Lux v. Haggin*, 69 Cal., 255, a
leading and instructive case, the question presented was the
effect of section 1422 of the Civil Code of that state, viz.,
"The rights of riparian proprietors are not affected by the
provisions of this title." It was held, after an exhaustive
examination of the subject, that the statute, so far as it
authorizes the appropriation of water, applies to such water
only as flows over the lands of the state and the United

States, and that the section quoted was intended to save the rights of all riparian owners whose titles were acquired before or since the adoption of the Code; and that construction of the statute accords with the views of both Mr. Pomeroy and Mr. Black. (See Black's Pomeroy, Waters, sec. 127.) It may be that our statute, unlike the Code of California, was intended to embrace all waters of the state, since it is an historical fact, of which we take notice, that the public lands along the streams of this state had practically all been disposed of previous to 1889. But it is unnecessary to pursue the subject at this time, for, assuming such to have been the intention of the legislature, it is a clear invasion of private rights and within the prohibition of the constitution. The right of a riparian proprietor, as such, is property, and when vested can be destroyed or impaired only in the interest of the general public, upon full compensation and in accordance with established law. (*Lux v. Haggin*, supra; *Yates v. City of Milwaukee*, 10 Wall. [U. S.], 497; *Potomac Steamboat Co. v. Upper Potomac Steamboat Co.*, 109 U. S., 672; *Delaplaine v. Northwestern R. Co.*, 42 Wis., 214; *Bell v. Gough*, 23 N. J. Law, 624; *Trenton Water Power Co. v. Raff*, 36 N. J. Law, 335.) That the state may, in the exercise of the right of eminent domain, appropriate the water of any stream to any purpose which will subserve the public interests is not doubted, and that the reclamation of the inarable lands of the state is a work of public utility within the meaning of the constitution is a proposition not controverted in this proceeding. But even the state in its sovereign capacity is, as we have seen, within the restrictions of the constitution and can take or damage private property only upon the conditions thereby imposed. The proposition that the rights of riparian proprietors were abolished by operation of the statutes is, therefore, without merit. It does not, however, follow that equity will interfere to prevent the use of the water in this instance at the suit of the plaintiff, although actions to

prevent the invasion of private rights by persons claiming
public powers is a favored subject of equitable cognizance.
It is clearly established by the proofs that the construction
of the irrigating ditch was undertaken and carried out by
the defendant company in good faith in accordance with
the purpose of its creation, at a cost of many thousands of
dollars, and in the belief on the part of its promoters and
managing officers that it was entitled to divert the water of
the Republican river. It is also practically undisputed
that the plaintiff was from the first fully advised of both
the undertaking and the purpose of the defendant, and it
is certain that he interposed no objection thereto until after
the substantial completion of the work. The rule which
denies relief in equity to one who has slept upon his rights
applies in all its force to cases where the defendant is en-
gaged in a work of public interest. In fact there is no
principle more firmly established in the jurisprudence of
this country than that a suitor who has by his laches made
it impossible to restrain the completion or use of public
works without great injury to his adversary or the public
will be left to pursue his ordinary legal remedies. (*Erie R.
Co. v. Delaware, L. & W. R. Co.*, 21 N. J. Eq., 283; *Trap-
hagan v. Mayor of Jersey City*, 21 N. J. Eq., 206; *Campbell
v. Indianapolis & V. R. Co.*, 110 Ind., 490; *Midland R. Co.
v. Smith*, 113 Ind., 233; *Organ v. Memphis & L. R. Co.*,
11 S. W. Rep. [Ark.], 96; *Goodin v. Cincinnati & White-
water Canal Co.*, 18 O. St., 169; *Curtis v. La Grande Water
Co.*, 20 Ore., 34; High, Injunctions, sec. 643; Rorer, Rail-
roads, 741–757; Wood, Railway Law, 794.) And the
same principle is recognized by this court in *Nosser v.
Seeley*, 10 Neb., 460, *State v. Graham*, 21 Neb., 329, and
*Forbes v. McCoy*, 24 Neb., 702.)

We are asked to determine in this action the question of
the plaintiff's rights in the premises by reason of his al-
leged adverse use of the water of the Republican river for
more than ten years, and also whether the several irri-

gating companies engaged in directing the water of the river are joint wrong-doers in the sense that an action will lie against the defendant company for all of the damage resulting therefrom to the plaintiff; but those questions are, as we have seen, not presented by this record and will not be examined at this time. It follows, however, from reasons stated that the decree of the district court must be reversed and the action dismissed.

REVERSED.