MARY V. ONSTOTT, APPELLANT, V. AIRDALE RANCH AND CATTLE COMPANY ET AL., APPELLEES.

FILED MAY 14, 1935. No. 29381.

*Raymond & Raymond*, for appellant.

*Neighbors & Coulter*, contra.

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and REDICK, District Judge.

DAY, J.

This is a suit in equity begun March 13, 1933, the purpose of which is to enjoin the defendant from backing up water and overflowing plaintiff's land. The plaintiff's petition alleges that either in 1929 or 1930 the defendant constructed a dam across Pumpkin creek on its land adjoining plaintiff's land, backed up and impounded the waters of said creek, flooding plaintiff's land; that, as a result of backing up the water, hay and grass growing on the land covered by the water have been destroyed, and plaintiff was prevented from using her land during the years 1930, 1931, and 1932; that the defendant, by impounding the waters, has trespassed upon plaintiff's land, forcibly and in violation of her rights, over her protest, and threatens to continue to so trespass unless restrained.

The defendant's answer admits the construction of a dam on its own land which backs up water and floods plaintiff's land. It alleges affirmatively that the dam was constructed in 1911 and has been in continuous operation since, except when temporarily washed out. It charges plaintiff with knowledge of existence of the dam and overflow on land at the time of her purchase. It alleges a suit between predecessors in title of both plaintiff and defend-

ant and a subsequent compromise settlement for overflowing plaintiff's land. It is further alleged that the dam reservoir and irrigation works are now operated as they have been for more than twenty years, openly, notoriously, and adversely, except at such times as the dam was temporarily washed out.

The trial court found that, since the construction of the dam in 1911, the defendant had obtained a prescriptive right by adverse use to flood a part of the land of plaintiff; that the defendant does not have a right to increase the area of land flooded; that in 1929 defendant built a new headgate and outlet ditch, the bottom of which was 2.4 feet higher in elevation than that of the old gate, and in its use backed up the water to a greater extent than its right by prescription permitted. The defendant was enjoined from backing up water to any greater extent than will permit and secure a reasonable flow of water through the old headgate. The only question actually presented by this appeal is the prescriptive right of the defendant to flood the plaintiff's land.

The defendant, and by this term we include also its predecessor in title, constructed in 1911 a dam on its own land about thirty rods downstream from plaintiff's line. The defendant claims its adverse possession of plaintiff's land for backing up and storing water began at that time. It appears that there was an argument between defendant and plaintiff, which term also includes her predecessor in title, about backing up and flooding plaintiff's land, with the filing of a suit. The flooding of the land between 1911 and 1916 is evidenced only by the allegations in a petition filed in the district court for Banner county by plaintiff's grantor in 1914 and the answer filed in 1916. This petition alleges the flooding of the land in suit by backing up the water one quarter of a mile which covers four or five acres of this land and rendered certain other land useless because inaccessible. The defendant's answer alleges that by agreement, in consideration of $75, he had a right to operate said dam. There is some testimony that the damages were settled for that amount. However vague, un-

certain, and unsatisfactory the testimony may be in respect to this matter, it is fairly evident that the defendant continued to operate the dam and to flood plaintiff's land continuously until an unprecedented flood in 1916 or 1917 washed out the dam. There is testimony that the plaintiff's land was flooded less between 1913 to 1917 than it is now. The dam was repaired in 1917 and again in 1919, but it was again washed out. In 1919 it backed the water up about a quarter of a mile and covered about five acres of plaintiff's land for four months. It was not replaced until 1927, which replacement lasted only until the water reached the new fill of the dam. In 1929, however, the dam was rebuilt as it now exists with a concrete facing, and seems to be permanent, and during the years 1930, 1931, and 1932, just prior to the commencement of this suit, flooded the plaintiff's land to the extent of 9.3 acres, or, deducting the bed of the stream, a net of 3.64 acres. This statement of fact is based upon testimony from witnesses who are uncertain about many things. For example, it is impossible to ascertain from the record the increased acreage now flooded as compared to the period between 1913 and 1917. This much, however, is certain, that the defendant continually asserted the right to flood plaintiff's land to some extent whenever it was able to keep the dam in operation. An easement by prescription can be acquired only by an adverse user for ten years. Such use must be open, notorious, and adverse. *Omaha & R. V. R. Co. v. Rickards,* 38 Neb. 847.

To establish an easement by prescription, the evidence must establish the extent of the adverse use for a period of ten years. It would seem that the defendant could have presented more satisfactory evidence as to the operation of this dam and reservoir and the extent of the flooding during the years. It was operating the irrigation works. In many ways, this is an unsatisfactory record. The briefs in this court do not join issues. We appreciate the difficulty of the trial court in reaching a conclusion. The trial court rightly found from the evidence that the defendant had acquired a prescriptive right to flood the

lands of plaintiff, and that, by the construction of the new dam in 1929 and raising the elevation of the headgate, more water was impounded than before; that the defendant did not have a right to flood plaintiff's land to a greater extent than its right formerly acquired. One who has acquired an easement as an adverse user cannot enlarge the use beyond that of the ten-year period. *Dunn v. Thomas,* 69 Neb. 683.

There was no way from the record to determine the extent to which the land flooded was increased. We have searched the testimony of the engineers in a vain effort to determine the matter. The only testimony that has the slightest bearing is that of Drake, who testified that when he made a survey he found the old headgate to be 2.4 feet lower than the one he planned. He never examined the work after construction to see that it conformed to his plans. The amount of water impounded and the area flooded depend upon the height the water is raised by the dam. The testimony of the engineers does not state the difference in the water level in the dam before and after the new construction. The decree of the trial court enjoins the defendant from backing up on plaintiff's land water to any greater extent than will permit a reasonable flow of water through the old headgate and the old ditch as it existed prior to 1929. Temporary washouts of a dam which backs water upstream on land of another do not necessarily affect an easement by adverse user. *Moll v. Hagerbaumer,* 98 Neb. 555.

Where a prescriptive easement exists, the evidence must establish an extension of the use made within the period to justify the issuance of an injunction. It would require further litigation to determine the level to which the water could be dammed which would depend upon the height formerly maintained. This question can be and should be settled in this case. It cannot be done now in this court for the reasons stated, and the case should be remanded for a new trial.

Other questions argued are mentioned here that they may not seem to be overlooked. An individual does not

have the right of eminent domain for the use and benefit of himself or his estate under sections 46-601, 46-602, and 46-603, Comp. St. 1929, for the irrigation of his own land. Section 21, art. I of the Constitution, limits this right. *Welton v. Dickson*, 38 Neb. 767; *Jenal v. Green Island Draining Co.*, 12 Neb. 163. New Mexico and Utah have held that the works for the irrigation of an individual's land was a public use. But this court declined to adopt such a theory (*Vetter v. Broadhurst*, 100 Neb. 356), so that the plaintiff is not limited in this case to an action for damages.

The plaintiff is not compelled to submit to a flooding of her lands here, unless the defendant has acquired a right by prescription. That it would be convenient for it and of little damage or inconvenience to plaintiff is not a reason to deny the injunction, if otherwise proper.

For the reasons stated in the opinion, the judgment is reversed and the cause remanded for new trial.

REVERSED.