GEORGE WASSERBURGER ET AL., APPELLEES AND CROSS-APPELLANTS, V. BILL B. COFFEE ET AL., APPELLANTS AND CROSS-APPELLEES, GERTRUDE QUINTARD ET AL., INTERVENERS-APPELLEES AND CROSS-APPELLANTS.
141 N. W. 2d 738

Filed April 15, 1966. No. 36049.

Neighbors & Danielson, for appellants.

Atkins, Ferguson & Nichols, for appellees and interveners-appellees.

R. O. Canaday and Wilber S. Aten, for amicus curiae.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

Smith, J.

Riparian owners complained that they no longer could water cattle in creeks running through their lands, because upper irrigators were exhausting the streams by diversions pursuant to appropriation permits from the State of Nebraska. The district court found that the owners were entitled to the use of the streams for watering the number of cattle normally pastured on those parcels which were riparian but not on larger contiguous parcels in the same ownership, and the court accordingly enjoined the appropriators.

The hydra of perplexity in this case emerged from the dual administration of water resources under the doctrines of riparian rights and of prior appropriation. Although each method of administration contains internal controls, the law governing a dispute between riparian proprietor and appropriator is vague at best. The two methods are incompatible, and the disorder multiplies problems.

The issues are broad. Defendant appropriators deny that plaintiff landowners, including plaintiffs in intervention, possess a riparian water right. Going further and hypothesizing not only the right but also a wrongful interference with it, defendants take the position that plaintiffs should be left to an action for damages. Injunction is said to be an inappropriate remedy for the wrong to a riparian proprietor, and especially so where equities weigh against him.

On cross-appeal plaintiffs contend that the injunction stopped short of complete relief. According to them, all parcels contiguous to riparian land in the same ownership are also riparian; and livestock water is a use which defendants must respect under the terms of their permits.

The lands are located in Hat Creek watershed in Sioux County, Nebraska. Hat Creek flows generally north some degrees east across the county and into the State of South Dakota. A tributary, Sowbelly Creek, crosses a continuous tract of 3,320 acres owned by plaintiffs

Gertrude and Merrill Quintard. North of the confluence of the two creeks and within 8 miles of the Nebraska-South Dakota boundary, Hat Creek flows through the following four tracts, each of which is shown on exhibit 1-A to be continuous:

| Plaintiff Owners | Number of Acres |
|---|---|
| George and Beatrice Wasserburger | 3,440 |
| Ray and Patricia Semroska | 2,920 |
| John and Lois Geiser | 1,680 |
| John and Helen Engebretsen | 1,760 |

Defendants own more than 41,000 acres of land within the watershed, and they possess statutory permits to appropriate water from Hat Creek and its tributaries for purposes of irrigation and irrigation storage. The points of diversion are located upstream from plaintiffs' lands.

The major subjects of discussion are:

A. Statutory abrogation of the riparian water right.

B. The riparian water right in view of constitutional amendments.

C. Restrictions on quantity of riparian land.

D. Comparative reasonableness of uses by riparian proprietor and by appropriator.

E. Appropriateness of injunction.

A. Statutory Abrogation of the Riparian Water Right.

The common law fixes the rights and duties of riparian proprietors, except as it has been modified by Constitution or statute. See, § 49-101, R. R. S. 1943; Meng v. Coffee, 67 Neb. 500, 93 N. W. 713, 108 Am. S. R. 697, 60 L. R. A. 910. All agree that the common law has been modified by legislative adoption of the prior appropriation doctrine, but the parties differ on the time of the change. Defendants cite the irrigation act of 1889, which was effective March 27, 1889. Plaintiffs rely on the irrigation act of 1895, which was effective April 4, 1895. See, Laws 1889, c. 68, p. 503; Laws 1895, c. 69, p. 244.

The time of modification delimits the land which can validate the common law use by plaintiffs against the

statutory use by defendants.  If a severance of land from
the public domain occurred earlier than enactment of
the statute, a riparian water right in the private land
may be superior to an appropriative right; but if legisla-
tion preceded severance, the appropriative right out-
ranks the riparian right under the facts of the present
case.

Some parcels in the five tracts of plaintiffs were pat-
ented between 1890 and March 27, 1895, and receiver's
receipts show that a few of these patents had been
initiated by entries filed prior to March 27, 1889.  All
other patents were initiated after April 4, 1895.  The
district court selected the 1889 cutoff.

Nothing in the act of 1889 specifically dedicated to
the people the use of waters in watercourses, but the
law authorized appropriation for application to bene-
ficial use.  It announced that:  "As between the appro-
priators the one first in time is first in right."  It estab-
lished no permit system, but public notice was made a
prerequisite to future appropriative rights.  See Laws
1889, c. 68, p. 503.  Two sections provided as follows:

"The right of the use of * * * water, flowing in a
* * * stream * * * may be acquired by appropriation by
any person * * *; Provided, That in all streams not more
than fifty feet in width, the rights of the riparian pro-
prietors are not affected by * * * this act."  Art. 1, § 1,
p. 503.  (This proviso was amended in 1893 to apply to
streams not more than 20 feet wide.  Laws 1893, c. 40,
§ 1, p. 377.)

"All persons * * * owning or claiming any lands situ-
ated on the banks or in the vicinity of any stream are
entitled to the use of the waters of such stream for the
purpose of irrigating the land so held or claimed."  Art.
2, § 1, p. 506.

The irrigation act of 1895 inaugurated the present
system of appropriation.  The Legislature then dedi-
cated the use of unappropriated waters of every stream
to the people subject to appropriation for beneficial use,

and it declared water for purposes of irrigation to be a natural want. It specified that priority in time gave the better right as between those using the water for the same purpose, and it preferred domestic use over other uses in cases of insufficient water. See Laws 1895, c. 69, §§ 42, 43, 65, pp. 260, 268.

Our decisions have fostered both sides of the argument. There is authority that the 1889 act substituted the doctrine of prior appropriation for the common law. See, Crawford Co. v. Hathaway, on rehearing, 67 Neb. 325, 93 N. W. 781, 108 Am. S. R. 647, 60 L. R. A. 889; Osterman v. Central Nebraska Public Power & Irr. Dist., 131 Neb. 356, 268 N. W. 334 (by implication). Other cases have approved the 1895 cutoff on the theory that the Legislature then for the first time dedicated the use of natural streams to the people. See, Nine Mile Irr. Dist. v. State, 118 Neb. 522, 225 N. W. 679; Southern Nebraska Power Co. v. Taylor, 109 Neb. 683, 192 N. W. 317.

The history of irrigation legislation in the western states is checkered, but it suggests that prior to 1895 our Legislature intended only to chip away at the common law right. The 1889 law was taken substantially from a California act which provided that "the rights of riparian proprietors are not affected by the provisions of this title." However, our Legislature left out this section. Clark v. Cambridge & Arapahoe Irr. & Imp. Co., 45 Neb. 798, 64 N. W. 239. In California, riparian rights which had been acquired subsequent to the passage of the act were preserved against appropriations made after the acquisition. See Lux v. Haggin, 69 Cal. 255, 10 P. 674. The following explanation appears in 1 Wiel, Water Rights in Western States (3d ed.):

"In so far as Nebraska upholds the abrogation of the common law by State statute for future patents, it is contrary to Lux v. Haggin. The California court placed its decision to a great extent on the ground that abrogating the rule of riparian rights would interfere with the primary disposal of the Federal lands, an interfer-

ence not depending upon the date of a statute, and equally an interference if only abrogating for future patented land. * * * As the decision in Lux v. Haggin was rested largely on constitutional grounds, a strict adherence to the California doctrine does not recognize any power in the legislature to abrogate riparian rights present or future." § 126, pp. 155-156.

"* * * the very earliest statutes of several of these states contained a provision that all landowners on the banks of a stream have a right to the use of the water. This was probably intended as declaratory of riparian rights, to the same end as the California provision, 'The rights of riparian proprietors are not affected by the provisions of this title.' Such a statute existed in other States, where it is construed as only declaratory of riparian rights, and is held to force the court to follow the California doctrine." § 185, pp. 224-225.

The 1889 act, with its provisions at cross-purposes, is so unclear that any interpretation may be unsatisfactory, but we reach two conclusions. The references to riparian rights were declaratory of the common law, and the other provisions failed to substitute the prior appropriation doctrine. In respect to parcels which were severed from the public domain prior to April 4, 1895, plaintiffs may possess a superior right. Decisions in conflict are overruled on this point.

B. The Riparian Water Right in View of Constitutional Amendments.

In 1920 the doctrine of prior appropriation received constitutional protection with the adoption of Article XV, sections 4 to 6, Constitution of Nebraska. These sections, which incorporate part of the irrigation act of 1895, provide as follows:

"The necessity of water for domestic use and for irrigation purposes * * * is hereby declared to be a natural want.

"The use of the water of every natural stream * * * is hereby dedicated to the people * * * for beneficial

purposes, subject to the provisions of the following section.

"The right to divert unappropriated waters of every natural stream for beneficial use shall never be denied except when such denial is demanded by the public interest. Priority of appropriation shall give the better right as between those using the water for the same purpose, but when the waters of any natural stream are not sufficient for the use of all those desiring to use the same, those using the waters for domestic purposes shall have preference over those claiming it for any other purpose * * *. Provided, no inferior right to the use of the waters of this state shall be acquired by a superior right without just compensation therefor to the inferior user."

No amendment abolished riparian water rights. The prohibition against acquisition of a superior right without just compensation indicates that existing riparian rights were to be preserved. Another sign dispels any doubt. In the Constitutional Convention a member of the committee which proposed the amendment explained, "* * * the question of riparian rights * * * is not particularly affected * * *, except as custom is fast doing away with that right, * * *." Proceedings of the Constitutional Convention (1919-1920), p. 1916.

C. Restrictions on Quantity of Riparian Land.

To say that the 1889 act permitted future acquisition of riparian rights is not to say that all lands patented prior to the 1895 act are riparian for present purposes. Guidelines are needed.

Area restrictions vary from jurisdiction to jurisdiction, but it is generally understood that riparian land has at least two characteristics—a stream or lake bed and a present unitary possession. The parcel must include a part of the bed of a watercourse or lake, and the possession must be unitary in the sense that no part of the parcel is separated from the rest by intervening land in another possession. See, Krimlofski v. Matters, 174 Neb.

774, 119 N. W. 2d 501; Restatement, Torts, § 843, p. 326.

Plaintiffs argue that since the common law knows no limitation on the distance which a tract may extend away from a stream without loss of riparian status, all parts of their five tracts are riparian. Defendants take a different view. The size cannot exceed the area acquired by a single entry or purchase from the federal government; and it may be further reduced to a government subdivision of 40 acres or, in case of irregular tracts, a numbered lot designated in the government survey, even though additional land is included in the certificate of purchase or instrument of conveyance. The district court apparently restricted quantity to a government subdivision of 160 acres.

Some recognized tests appear in 1 Kinney, Irrigation and Water Rights (2d ed.), § 464, p. 788, as follows:

"First, the smallest separate piece or parcel of land bordering upon the stream in the history of the title of all of the land of the riparian owner at the time that the claim is made or at the time of use; second, the riparian land stops at the outermost edge of the land away from the stream as described by a single original entry of the land in the acquisition of title from the Government; and, third, * * * the riparian lands held in common ownership include the entire tract, no matter how acquired or from what sources of title, at the time the claim is made."

Crawford Co. v. Hathaway, on rehearing, 67 Neb. 325, 93 N. W. 781, 108 Am. S. R. 647, 60 L. R. A. 889, approved the restriction to a single original entry or purchase of land in the acquisition of title from the United States, but the court reached no conclusion concerning further restriction to a government subdivision. The two tests have not been accepted in a majority of jurisdictions applying exclusively the common law of riparian rights. "The area or size of the parcel is immaterial insofar as its character as riparian land is concerned." Restatement, Torts, § 843, Comment c, p. 327. Between riparian

proprietors restrictions to original entries or to government subdivisions are clearly arbitrary, and we disapprove them.

These tests, arbitrary in contests between riparian proprietors, are likewise unsuitable here, because they ignore the historical development of the two doctrines in Nebraska. By the same token, if the common law is not modified in order to resolve the competing claims in suit, legislative abrogation of future riparian rights to water use will lose vitality.

In such cases land has a riparian status only if two requirements are met. First, by common law standards the land was riparian immediately prior to the effective date of the irrigation act of 1895. Second, the land subsequently has not lost its riparian status by severance; consequently it ordinarily is a part of the smallest tract held in one chain of title leading from the owner on April 4, 1895, to the present owner. If a tract was riparian on April 3, 1895, its status was unaffected by the statutes. However, if the tract, or part of it, later lost its riparian status as a result of severance, the nonriparian land cannot regain the riparian status.

All parcels patented prior to April 4, 1895, and located in the five tracts, satisfy the test of present unitary possession, but the history of the titles is incomplete. Little has been established beyond patent and present ownership. In view of the unsettled law the cause should be remanded in order that the parties may adduce additional evidence.

D. Comparative Reasonableness of Uses by Riparian Proprietor and by Appropriator.

An incompatibility of riparian rights and appropriative rights is undoubtable. The common law test of reasonable use places little emphasis upon the time when the use was initiated. See, Restatement, Torts, c. 41, topic 3, scope note, pp. 344-346; 1 Wiel, Water Rights in Western States (3d ed.), § 801, p. 857. Under the appropriation doctrine, priority in time gives the better right be-

tween users for the same purpose. The flexibility of the one test opposes the rigidity of the other.

We cannot synthesize the two doctrines in one decision. Facts are so important that in the absence of legislation a viable system ought to be evolved by the process of inclusion and exclusion, case by case. Here the conflicting claims are claims of private right to uses for purposes of livestock water and of irrigation. We limit our broad outline of a system to the specific facts before us.

An appropriator who, in using water pursuant to a statutory permit, intentionally causes substantial harm to a riparian proprietor, through invasion of the proprietor's interest in the use of the waters, is liable to the proprietor in an action for damages if, but only if, the harmful appropriation is unreasonable in respect to the proprietor. The appropriation is unreasonable unless its utility outweighs the gravity of the harm. Compare Restatement, Torts, §§ 851, 852, pp. 353, 358.

In evaluation of the utility of the appropriation causing intentional harm to a riparian proprietor, the following factors are to be considered: (1) The social value which the law attaches to the use for which the appropriation is made; (2) the priority date of the appropriation; and (3) the impracticability of preventing or avoiding the harm. Compare Restatement, Torts, § 853, p. 361.

In evaluation of the gravity of intentional harm to a riparian proprietor through the appropriator's use of the waters, the following factors are important: (1) The extent of harm involved; (2) the social value which the law attaches to the riparian use; (3) the time of initiation of the riparian use; (4) the suitability of the riparian use to the watercourse; and (5) the burden on the riparian proprietor of avoiding the harm. Compare Restatement, Torts, § 854, p. 369.

Since settlement the five tracts have been used for grazing, and for a long time plaintiffs have been using them mostly for winter pasture from October 15 to May

15. There is evidence that for an animal unit—cow and calf—plaintiffs require 15 acres of winter pasture and 35 acres of pasture all year. The cattle consume only a small portion of the stream flow.

With few exceptions Hat Creek and Sowbelly Creek supplied sufficient livestock water during the winter grazing seasons prior to 1959. Some shortages were met by one or more appropriators turning down water upon request. For many years the creeks have been dry in the summertime, but the principal complaint is the winter deficiency, although two plaintiffs have been holding cattle on summer pasture.

Since 1958 defendants have been interfering with plaintiffs' use. During the 1959-1960 winter the creeks flowed intermittently. The diminution was caused in substantial part by defendants. The permits, bearing adjudicated priority dates as early as 1880 and as late as 1961, indicated that after 1951 defendants increased their appropriations out of Hat Creek and its tributaries approximately 11 cubic feet per second for irrigation of more than 800 additional acres. In the winters following 1959-1960 the flow of Hat Creek through the southernmost tract of plaintiffs started at the end of the calendar year.

No other source has been reasonably available to plaintiffs. They tried to use well water, but it was alkaline. It is impracticable for them to impound water. There is no site suitable for a storage dam, and the cost of a dam strong enough to withstand floodwaters would be excessive.

Defendants point to needs of their own. They and their predecessors developed extensive facilities consisting of diversion and storage dams, pipelines, and irrigation canals and laterals. Their capital expenditures in the last 20 years exceeded $250,000. They possess not less than 3,500 acres of irrigated hay land producing annual cuttings of 4,350 to 6,200 tons. They graze more than 5,000 head of cattle in the wintertime on their lands

within the watershed. If they are unable to irrigate their hay meadows, they will be compelled to reduce the size of their herds at least one-half. The quantity of water available to defendants for appropriation under the judgment of the district court was not estimated.

Causes of action for damages have been established. With few exceptions the amount of water was adequate until 1959, and deterioration resulted substantially from increased abstractions of water by defendants. In contrast water for the number of cattle on riparian pasture in accordance with good husbandry represents neither a new use nor an enlarged use.

Defendants contend that a riparian right is subject to an appropriative right prior in time. Some of their permits bear adjudicated dates prior to severance of any parcel in the five tracts from the public domain. Under the 1895 statute the board of irrigation fixed the priority dates of appropriators who had acquired rights earlier than the effective date of the statute. The board determined appropriative priorities but not riparian rights. Compare Plunkett v. Parsons, 143 Neb. 535, 10 N. W. 2d 469. The adjudication established the time when the appropriations had been initiated, but time is only one of the elements to be considered in the adjustment of the competing rights.

On the facts of this case the riparian right is superior. Plaintiffs' need for livestock water is greater than defendants' need for irrigation, and the difference is not neutralized by time priorities. For the most part the land within the watershed is pasture. Irrigation has increased the grazing capacity of defendants' pastures; loss of irrigation would not destroy them. Between plaintiffs and defendants approximate equality of grazing capacity is more desirable than glaring inequality.

E. Appropriateness of Injunction.

The argument that equity refuses to enjoin the appropriator from wrongful interference with the riparian use comes from prior decisions in injunction suits in-

volving competing uses by the riparian proprietor and by the appropriator. The appropriator prevailed, whichever party sought judicial protection. See, Cline v. Stock, on rehearing, 71 Neb. 79, 102 N. W. 265; McCook Irr. & W. P. Co. v. Crews, on rehearing, 70 Neb. 115, 102 N. W. 249; Clark v. Cambridge & Arapahoe Irr. & Imp. Co., 45 Neb. 798, 64 N. W. 239.

We think the cases have been misread. The appropriative rights seem to have been asserted by irrigation companies offering a public service. The court attached significance to the public benefit, to the appropriation project completed in good faith and at great cost, and to the tardy initiation of the riparian use. If the court went too far, the limitations themselves have remained. We reject the startling proposition that equity sends every riparian proprietor packing. Defendants are private appropriators—not champions of the public interest. Compare, Vetter v. Broadhurst. 100 Neb. 356, 160 N. W. 109, 9 A. L. R. 578; Onstott v. Airdale Ranch & Cattle Co., 129 Neb. 54, 260 N. W. 556. The remedy rests on other considerations.

The appropriateness of injunction against tort depends upon a comparative appraisal of all factors in a case, some of the primary factors being the following: (1) The character of the interest to be protected; (2) the public interest; (3) the relative adequacy to the plaintiff of injunction and of other remedies; and (4) the relative hardship likely to result to defendant if injunction is granted and to plaintiff if it is denied. See, McCubbin v. Village of Gretna, 174 Neb. 139, 116 N. W. 2d 287; Restatement, Torts, § 936, p. 693.

The public interest in the maximum conservation and utilization of water resources exerts a powerful influence upon the propriety of the remedy. The injunction before us speaks of a constant flow for watering cattle. From conflicting evidence we conclude that loss of water in transit is not substantial; but another loss, the flow of unused water, may not be so justified.

If we had a judgment which went no further than to protect waste at the expense of beneficial use, the result would be clear. But the supposition is not the present case. If defendants may exhaust the flow, the riparian tracts will be of little use for pasture. The parties stand at two extremes, and there is no middle ground.

We regret our inability to find a middle ground, a "physical solution," under the broad powers of equity to ration water and to condition an order of injunction. See Rancho Santa Margarita v. Vail, 11 Cal. 2d 501, 81 P. 2d 533. The evidence negates a satisfactory alternative method of supply. The cattle found well water barely drinkable, and stream water cannot be impounded at reasonable cost. Under all the circumstances plaintiffs are entitled to injunctive relief in connection with those lands which the evidence on remand establishes to be riparian.

The district court measured relief in terms of a constant flow in sufficient quantity for the watering of livestock in the numbers normally pastured on the riparian land. The court safeguarded normal operations consistent with good husbandry, but it impliedly disapproved any surcharge on riparian pasture. Plaintiffs say that this yardstick is inaccurate, that water for all of their cattle is a domestic use protected by certain limitations on defendants' permits.

Some of the permits require the permittee to respect riparian rights to so much of the natural flow as is necessary for domestic use, including livestock water. Similar language has limited all other approvals of applications for natural flow since the first appropriation was adjudicated in 1895, but the limitations are unexplained in the records of the Department of Water Resources.

The district court correlated these administrative restrictions with the injunction. We agree that defendants should be enjoined from interfering with the use of livestock water for the number of cattle held on riparian pasture in accordance with good husbandry, but

we do so without approving any interpretation of the permits or defining domestic use under the Constitution and the common law.

As to the rest of the cattle plaintiffs' contention has two dimensions. First, the permits protect the water use on nonriparian pasture. Second, a surcharge on riparian pasture is immaterial. The argument lacks strength under the test of reasonableness in the dual administration of water resources. It gains none from the limitations on the permits.

We have not referred to a separate 160-acre tract owned by plaintiffs Geiser or to any lands owned by plaintiff S. C. Turnbull, all being shown on exhibit 1-A. The district court correctly denied injunctive relief in respect to these parcels.

The judgment is affirmed in part and reversed in part, and the cause is remanded for proceedings consistent with this opinion. Costs on appeal are taxed to appellants.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.