WILBERT BRUMMUND, APPELLANT, V. ROBERT VOGEL ET AL., APPELLEES.

168 N. W. 2d 24

Filed May 16, 1969. No. 37154.

T. L. Grady, for appellant.

Deutsch & Hagen, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, SMITH, McCOWN, and NEWTON, JJ., and RONIN, District Judge.

RONIN, District Judge.

This is an action in equity wherein Wilbert Brummund, plaintiff herein, seeks to enjoin Robert Vogel and Gloria Vogel, defendants, from constructing an earthen dam in a spring-fed creek on defendants' land. After trial, the district court entered judgment for the defendants and denied an injunction. From an order overruling his motion for new trial, the plaintiff has appealed.

Plaintiff is the owner of 200 acres of land in the west half of Section 23, Township 24 North, Range 1 East of the 6th P.M., in Stanton County, Nebraska. The defendants are the owners of the northeast quarter of Section 22, which tract lies immediately west of the north one-half of plaintiff's land and is separated by a county road on the section line.

There are two separate, small spring-fed creeks which have their sources on the defendants' farm, flow in a general southeasterly direction, and merge into one stream near the east section line of their land. This stream then proceeds under a bridge on the county road onto the plaintiff's farm and continues in a southerly di-

rection along the west edge of his farm and eventually flows into Pleasant Run Creek south of plaintiff's land. These two creeks on the defendants' land are identified as West Creek and East Creek. The springs which supply West Creek are larger than East Creek. Its ditch channel varies from 2½ to 6 feet deep and during rains or melting snows becomes a good-size creek. East Creek becomes dry during part of the summer when there is no run-off of surface water and after the merger of the two creeks, portions of the creek bed on plaintiff's land tend to become dry for some time in the summer. The proposed location of defendants' dam is on West Creek above its merger with East Creek. The evidence further shows that the plaintiff was pasturing 28 head of cattle and their calves whose main source of water was the creek that came from the defendants' land. Plaintiff also has a small spring-fed creek which source is on his land, but which dries up in summer weather.

Plaintiff testified he had never previously seen the plans for the proposed dam, which were received in evidence. The plans are for an earthen dam 16 feet high from the bottom of the West Creek bed, 520 feet in length, 10 feet wide at the top, and with a width of about 80 feet at its base. The primary overflow in the dam is a 30-inch vertical pipe or morning glory intake located 10½ feet above the bed of the creek, which connects with a 24-inch horizontal pipe for conducting water through the dam. There is a provision for an emergency spillway at 13½ feet above the creek bed. In addition, a 24-inch vertical pipe with gravel was placed 6½ feet above the bed of the stream, this being attached to a 1½-inch pipe which was 20 feet in length and which ran into the interior of the dam and joined with the 24-inch pipe which served the primary overflow outlet.

Plaintiff's engineer, Harvey Johnson, testified that he had made a visual inspection of the area surrounding the proposed dam, and made general reference to the

plans and specifications of the dam which are in evidence. He did not relate any measurements that he personally took. Neither did he measure the rate of flow of West Creek either above or below the proposed site of the dam, nor could he estimate it. Further, the witness was not informed as to the size and steepness of the run-off area, the usual amount of rainfall in this locality during the pasture season, the nature of the soil or of the terrain above the dam, nor the quantity of water that might percolate through, under, or around the dam, nor the depth of the bed of West Creek at the site of the dam. Plaintiff's engineer stated that there would be a loss of water by evaporation, and that by observation it was his opinion that the amount of water that would go through the 1½-inch pipe would not be as ample as the supply that generally flows downstream. He agreed with defendants' witness that ⅓-inch run-off would fill the pond, and once the pond was filled he could not positively state that there would be any impediment whatever to the normal flow of the stream below the dam just prior to its entry on plaintiff's land.

Gene Phillips, the Stanton County soil conservationist, was the only witness for the defendants. He related that he had 9 years of experience working with approximately 100 different dams, of which 25 to 30 dams had been in Stanton County. His signature as technician appears on exhibit 9B which is a profile of the drainway with detailed measurements of the immediate watershed involved. Exhibit 9A is a cross-section drawing of the proposed dam, giving detailed specifications. Phillips testified that the proposed dam met the requirements of the federal government; would provide for a pond 1.3 acres in maximum surface area with a maximum storage capacity of 3.6 acre feet; that the pond would be below and not reach the area of the fountainhead of the springs; and that the sources of the water would be a 155-acre drainage area of the defendants' land and the water from the springs of their land. The

witness took various readings on June 7, 1967, and determined the rate of flow of West Creek was 25 gallons per minute at the dam site and 20 gallons per minute below the dam site and just about the junction of these creeks, and that the rate of flow in the East Creek was 12 gallons per minute. Phillips testified that the 1½-inch pipe was usually not included in these dam structures, but occasionally were inserted as a device for livestock watering and he inferred that it was included for plaintiff's benefit; that 3/10 of an inch run-off water over the 155-acre drainage area would completely fill the pond if empty, independent of any water from the spring, and the water level would then be at the primary overflow 30-inch riser on the dam.

We find that the waters from the springs on defendants' land which are the source of West Creek flow generally, although not continuously, in a well-defined channel and in a sufficient quantity and direction across plaintiff's land into another stream of water to constitute a watercourse within the meaning of section 31-202, R. R. S. 1943. The owner of the land upon which springs are located whose waters are the source of a definite watercourse does not have an exclusive right to control and use the waters therefrom to the injury of a lower riparian owner or senior appropriator. Rogers v. Petsch, 174 Neb. 313, 117 N. W. 2d 771; Slattery v. Dout, 121 Neb. 418, 237 N. W. 301.

This being an action in equity, we are required to determine the issues of fact complained of de novo and reach an independent conclusion without reference to the findings of the district court. § 25-1925, R. R. S. 1943. The factual situation presented in this case involves a further application of competing water claims by an upstream appropriator with one who is a downstream domestic user under the guidelines detailed in Wasserburger v. Coffee, 180 Neb. 149, 141 N. W. 2d 738.

The evidence in this case is undisputed that plaintiff and his immediate predecessors have for many years

watered their cattle from the water that came from West Creek which flowed through or on their pasture land. Plaintiff does not plead nor prove facts entitling him to vested riparian rights under the common law which might precede April 4, 1895, the effective date of the irrigation act of 1895, which is the cut-off date for the acquisition of riparian rights and the invoking of the law of priority of application giving the better right as between those using the water for the same or different purposes, and preferring domestic use over other uses in cases of insufficient water. §§ 46-203 and 46-204, R. R. S. 1943; Wasserburger v. Coffee, *supra.* Plaintiff concedes that he has never applied for nor secured any water rights from the Department of Water Resources. The defendants are upstream appropriators having applied for and received on August 24, 1967, their priority of appropriation for storage of water for watering livestock and erosion control purposes. We hold that the defendants have the right to have a reasonable use of the waters of West Creek for domestic purposes which includes the watering of their stock even though this may result in the diminution of the water supply arising from a reduced water flow being available for domestic purposes for the plaintiff downsteam user. However the intended purpose of the defendants in constructing the dam to fill the pond is not primarily for domestic purposes. The plaintiff testified to an account in the newspaper that it was to serve as a fish pond which would be primarily for recreational purposes, while the defendants' application for authority recites that it is for domestic and soil erosion control purposes, the latter being agricultural in nature.

Article XV, sections 4 to 6, Constitution of Nebraska, incorporates a portion of the irrigation act of 1895 and particularly what is now section 46-204, R. R. S. 1943, in providing as follows: "* * * 'Priority of appropriation shall give the better right as between those using the water for the same purpose, but when the waters of any

natural stream are not sufficient for the use of all those desiring to use the same, those using the waters for domestic purposes shall have preference over those claiming it for any other purpose, * * *.' " Wasserburger v. Coffee, *supra*.

Exhibit 11 is the certificate of the Department of Water Resources approving the defendants' application to impound the waters of this tributary to Pleasant Run Creek, but it expressly recites as a condition: "That the prior rights of all persons who, by compliance with the laws of the State of Nebraska, have acquired a right to the use of the waters in this stream must not be interfered with by the issuance of this permit." We hold that the right of plaintiff to use water from this stream for domestic purposes is superior to the defendants' right to construct a dam to have a reservoir for either agricultural or recreational purposes, and the fact that defendants may also use it for domestic purposes will not justify any unreasonable diminution of water resulting in harm to plaintiff.

The correlative rights of the parties to the use of the water in West Creek having been determined, we turn to the remaining issue of fact as to whether the construction of the proposed dam will result in an unreasonable shortage of water for plaintiff to his damage. The proposed construction of the dam is for obvious beneficial purposes. The defendants further contend it will actually benefit and not harm plaintiff. It is stated in 56 Am. Jur., Waters, § 27, p. 517: "* * * a dam may be constructed and maintained across a stream by a riparian proprietor, or by another with proper authority, provided that thereby he does not appreciably diminish the amount of water which should naturally flow onto or by the land of lower proprietors, or materially affect the continuity of the flow, * * *." The burden of proof is upon the plaintiff to establish that the upper proprietor will make an unreasonable use of the

waters of the stream to his damage. 93 C. J. S., Waters, § 37g, p. 678, § 36(9), p. 666.

The effect of the construction of a dam on the flow of water in a nonnavigable stream in this case is affected by many factors and conditions and is generally a subject for the opinion of expert witnesses with special knowledge and experience in this field of engineering. Olson v. City of Wahoo, 124 Neb. 802, 248 N. W. 304. The expert evidence offered by the plaintiff is indefinite and inconclusive as to what effect the proposed dam would have on the flow of water downstream, and we hold plaintiff has not met his required burden of proof.

At the time of the hearing on the motion for new trial, the plaintiff filed his affidavit in support thereof, but did not offer it in evidence. The affidavit does not appear in the bill of exceptions and will not be considered on appeal. Blanco v. General Motors Acceptance Corp., 180 Neb. 365, 143 N. W. 2d 257.

Plaintiff complains that the defendants have the right to control the shut-off valve on the 1½-inch pipe which was placed in the proposed dam 6½ feet above the bed of the stream. The evidence of the defendants is to the effect that this 1½-inch pipe was specially designed for the benefit of the plaintiff. Plaintiff is entitled to protection from any interference by the defendants as to the uninterrupted flow of water through this pipe which is provided for in the plans of the proposed dam, as well as any silting or other obstruction in the functional operations for the conducting of water through the various outlets of the dam.

We hold that plaintiff's complaint in regard to the fact that the 1½-inch pipe has a shut-off valve under the control of the defendants and the right to have an uninterrupted flow of water through this pipe was not an issue litigated between the parties so as to give rise to the defense of res judicata in any subsequent litigation. An equity court has the right to limit the rule of res

judicata to issues actually tried without binding the parties to issues not litigated or intended to be litigated. Muff v. Mahlock Farms Co., Inc., *ante* p. 286, 167 N. W. 2d 73. To this extent, we modify the order of dismissal and affirm the judgment of the trial court.

AFFIRMED AS MODIFIED.